Anthony MIRRA, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

No. 364, Docket 30795.

United States Court of Appeals
Second Circuit.

Argued March 9, 1967.

Decided June 27, 1967.

Jerome Lewis, Brooklyn, N. Y., for petitioner-appellant.

Michael W. Mitchell, Asst. U. S. Atty., Southern District of New York (Robert M. Morgenthau, U. S. Atty., and Otto G. Obermaier, Asst. U. S. Atty., on the brief), for respondent-appellee.

Before LUMBARD, Chief Judge, and WATERMAN and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Anthony Mirra, confined under a 20-year sentence after trial to the jury on a charge of narcotics conspiracy, judgment affirmed in United States v. Bentvena, 319 F.2d 916 (2d Cir.), cert. denied [Ormento v. U. S., Di Pietro v. U. S., Fernandez v. U. S., Panico v. U. S., Galante v. U. S., Loicano v. U. S., Mancino v. U. S., Sciremammano v. U. S., Mirra v. U. S.], 375 U.S. 940, 84 S.Ct. 345, 346, 353, 355, 360, 11 L.Ed.2d 271, 272 (1963), moved under 28 U.S.C. § 2255 to vacate the sentence on the ground that on an occasion during the trial Mirra had been mentally incompetent to understand the proceedings against him and to assist counsel in his own defense. He also moved in the § 2255 proceeding to disqualify the trial judge, Hon. Lloyd F. MacMahon. The motions were denied without hearing and Mirra appeals. We find no error in either ruling and affirm the judgment.

The incident on which Mirra's claims are based occurred during his second trial. The history of the proceedings up to that point may be culled from reports of the various appeals to date. During the first trial, before Levet, J., and a jury, Judge Levet found it necessary to remand the defendants. This court affirmed the order, describing the circumstances as follows, 288 F.2d 442, 445–446 (2d Cir. 1960):

"We also hold that under all the circumstances of the case, especially a succession of misadventures which have already caused numerous delays and adjournments in the presentation of the evidence, the order of the trial judge was a proper exercise of discretion for the purpose of ensuring the orderly completion of the trial.

"From its inception the trial has been bedeviled by frequent delays.

Commenced on November 21 rather than November 14 because of the disappearance of a defendant (Angelo Tuminaro) still a fugitive, it was thereafter impeded by apparent illness, accident and other misfortune.

"John Ormento became ill Tuesday, December 6. The trial halted at 2:30 in the afternoon and did not resume until Friday, December 9. On Wednesday, December 14, David Petillo found himself unwell and was thereupon transferred to Bellevue where a preliminary diagnosis of cardiac insufficiency was made. After hearing conflicting medical testimony, the trial judge granted a further adjournment. Tests subsequently established that Petillo was not suffering from heart disease.

"The trial was then scheduled to resume Thursday, December 22. On that day, after a motion for mistrial (grounded on prejudice to all the defendants by the prior delays) had been denied, it was found impossible to continue because one of the defendants (Sancinella) was not present. The defaulter appeared that evening and was remanded. On Tuesday, December 27, the court was informed that counsel for Sancinella was suffering from an incapacitating illness. Sancinella was thereupon directed to retain new counsel, or accept court-appointed counsel, and to familiarize said counsel with the facts of the case. Because of this and the death of a juror's brother, the trial was then adjourned to January 3, 1961. On January 3, Sancinella indicated an inability to procure other counsel; the court therefore assigned him Albert Krieger, Esq., counsel for the defendant Gellman. Sancinella refused, however, to accept or confer with any counsel other than the still incapacitated attorney who had represented him at the outset. In consequence, the trial judge granted Sancinella a mistrial and severance.

"Reports that William Bentvena was ill forced suspension of proceedings on Friday, January 13.

"On Wednesday, January 25, the court was informed that the defendant, Struzzieri, had been injured in an automobile accident which had occurred at about 3:30 A.M. that morning. Investigation by the government revealed that the car with which Struzzieri had collided was driven by one Franzione, a man possessed of an extensive criminal record and despite his denials, apparently well acquainted with Struzzieri. On January 27, the physician in charge of Struzzieri at Queens General Hospital informed the court that Struzzieri could be discharged from the hospital the following day. Disagreement as to the possibility that Struzzieri might be suffering from a subdural hematoma, resulted in extended hearings at which medical testimony was presented by a court-appointed neuro-surgeon, a resident at the hospital, and a neurologist retained by Struzzieri. The defendant's neurologist testified that Struzzieri's condition demanded a diagnosis of 'subdural suspect'; he urged a spinal tap to clarify the matter. The court-appointed physician thereupon re-examined the patient and reported that he was convinced beyond a reasonable doubt that Struzzieri did not have a subdural hematoma, was malingering, and was able to stand trial. Struzzieri subsequently refused to permit a spinal tap.

"To the date of remand there had been precisely 25 Trial days; 6 in November, 6½ in December, 12½ in January. The government had not yet finished putting in its case.

"At the trial's commencement on November 21, the court selected four alternate jurors. By January 30 two jurors had been excused leaving only two alternates for further emergencies, little enough insurance for a long trial in the middle of a severe winter.

"Before remanding appellants, the trial judge, out of the presence of the jury, considered the substantial facts

in the development of the case and concluded:

'I am unable to discriminate between the defendants. I realize that counsel may be to some extent inconvenienced. However, in order to assure the presence of the defendants at the trial I am, I believe, after balancing the situation, constrained to * * * direct the remand of all defendants now on bail.' Record 5822–23.

The court then undertook to make arrangements so that counsel might suitably confer with their clients."

Later in the first trial, Mirra refused to obey an order of the court to be quiet and sit down, which resulted in a 20-day contempt sentence following mistrial in the case, affirmed sub nom. United States v. Galante, 298 F.2d 72 (2d Cir. 1962).

In the second trial before Judge MacMahon and a jury, defendants were again remanded by order affirmed United States v. DiPietro, 302 F.2d 612 (2d Cir. 1962). Thereafter, the incident on which the present proceeding is based resulted in another contempt sentence for Mirra, affirmed *per curiam* 304 F.2d 883 (2d Cir.), cert. denied 371 U.S. 927, 83 S.Ct. 296, 9 L.Ed.2d 234 (1962). The narcotics conviction of Mirra in the principal case was affirmed, 319 F.2d 916 (2d Cir.), cert. denied 375 U.S. 940, 84 S.Ct. 360, 11 L.Ed.2d 272. This court's opinion briefly reviewed some of the trial incidents. 319 F.2d 916, at 929–930:

"The first trial of this indictment began on November 21, 1960, after a number of delays, including a one-week postponement occasioned by the flight of the defendant Tuminaro on the eve of trial. It proceeded along its rocky road for six months over every conceivable type of obstruction and interruption. On May 15, 1961, the eve of summations, it ground to a halt after the foreman of the jury broke his back in an unexplained fall down a flight of stairs in an abandoned building in the middle of the night. No alternate jurors (four had been originally empanelled) remained and a mistrial was declared. As this court has already had occasion to consider the misadventures in the first trial and the misconduct of the defendants which resulted in their remand and in contempt actions against some of them, they will not be fully catalogued here.

"At the conclusion of the first trial, the defendants were enlarged on bail and, with the court's permission, various attorneys from the first trial were discharged from their representations. The case appeared at regular monthly intervals on the trial calendar beginning June 19, 1961. On each occasion it was adjourned because a number of the defendants said that they had been unable to retain counsel notwithstanding their ability to raise substantial bail. As early as July 31, 1961, Judge Murphy sensed 'that the failure to retain counsel was part of a plan to postpone trial.' Despite efforts of the court and threats of contempt proceedings, it was not until March 9, 1962, that all defendants who had not been severed on the government's motion had counsel, either retained or appointed by the court. After further delays and substitutions of counsel (to be treated more fully below), the trial began on April 2.

"During the polling of jurors in this opening day of trial, the first outburst by Salvatore Panico occurred. This incident was a precursor of events to come. Similar outbursts by Panico and other defendants became commonplace. On one occasion Panico climbed into the jury box, walked along the inside of the rail from one end of the box to the other, pushing the jurors in the front row and screaming vilifications at them, the judge, and the other defendants. On another occasion, while the defendant Mirra was being cross-examined by the Assistant United States Attorney, Mirra picked up the witness chair and hurled it at the Assistant. The chair narrowly missed its target but struck the jury

box and shattered. The trial judge responded to these outbursts by having the perpetrators gagged and shackled. We have described only two of the more dramatic disturbances which plagued the trial of this case for we find it neither necessary nor judicious to publicize or preserve the vile language and rebellious conduct that characterized this trial. Suffice it to say that more abhorrent conduct in a federal court and before a federal judge would be difficult to conceive."

The appellant claimed that he was incompetent when he threw the witness chair at the prosecutor June 4, 1962 while under cross-examination regarding a prior narcotics conviction, and that the condition persisted after receiving some pills on the following day. He claimed that refusal of a requested psychiatric examination on June 4 and continuation of the trial on those two days was a denial of due process. Appellant offered in support an affidavit of a psychiatrist to the effect that the only way a competent opinion could be formed as to Mirra's mental condition on June 4 was by prompt examination at the time. Judge MacMahon denied the motion to vacate on two grounds, waived by deliberate failure to press the claims on direct appeal, and because "the application, files and records of the case alone" conclusively showed that his claims have no merit.

The record shows that Mirra's outburst on June 4 came at a critical point in his cross-examination. He had denied on the stand any previous involvement in narcotics traffic and any acquaintance with most of his co-defendants, whom he had characterized as "junk pushers" and "dope pushers." Government counsel then questioned him as to a conviction in 1958 and asked him to refresh his recollection from a government exhibit as to the charge on which he had been convicted. Mirra responded with the recitation of the statutory citation, Title 18, [21], Sections 173 and 174, twice repeating this after having his attention called to the language of a portion of the exhib-

it. Thereupon the exhibit was placed in evidence and when government counsel read from it "conspiracy to violate the United States Narcotics Laws," Mirra threw the chair. Seized by the marshals Mirra said, "All right, I won't fight. All right, I won't fight." Mirra was led out and recess was taken. During the recess his counsel reported that he had tried to consult with him and couldn't get through to him, and made the request for his commitment for examination by a qualified psychiatrist. When Mirra was brought back into the courtroom, the Court ordered him put back in his chair, shackled and gagged. Mirra asked, "Why are you going to gag me for?" When brought up for sentencing June 26, 1962 on contempt charges for the chair incident and other incidents during the trial, on being asked by the Court whether he had anything to say in his own behalf, Mirra answered, "Nothing much, your Honor, except that I am a hothead, period," and later, "Well, I am sorry for the chair incident, your Honor. The other things I didn't realize were contemptible. I just was shooting off my mouth. I didn't realize that was contempt."

It is Mirra's claim that he has no memory of June 4 after counsel asked him of the earlier conviction and that while his memory is clearer as to the events of the next day, it is still hazy. (Opinion of Dr. Helfand, pp. 11 and 12 of the record on this appeal.) Mirra's court-appointed trial counsel was apparently convinced that there was genuine difficulty in communicating with Mirra during the two day period.

The point, however, was bypassed on direct appeal, and is not now available. It is by no means newly discovered, for it was argued on the appeal from his contempt conviction that the trial court should have conducted an inquiry into his mental condition at the time the chair was thrown. He cannot raise what is essentially the same argument now. United States v. Re, 372 F.2d 641 (2d Cir., Feb. 6, 1967) (Waterman, J., concurring), citing United States v. Mar-

chese, 341 F.2d 782, 789 (9th Cir.), cert. denied 382 U.S. 817, 86 S.Ct. 41, 15 L.Ed. 2d 64 (1965); Matysek v. United States, 339 F.2d 389, 391 (9th Cir. 1964), cert. denied 381 U.S. 917, 85 S.Ct. 1545, 14 L.Ed.2d 437 (1965); Stein v. United States, 313 F.2d 518, 522 (9th Cir. 1962), cert. denied 373 U.S. 918, 83 S.Ct. 1307, 10 L.Ed.2d 417 (1963); United States v. Jenkins, 281 F.2d 193 (3rd Cir. 1960).

■ Even if we were to reach the question, moreover, we would find no error in the determination of the § 2255 motion. It is obvious from the record that the trial court, from his observation of Mirra during the trial and the history of the prior proceedings, concluded that Mirra was shamming and deceiving his counsel as part of a concerted effort to disrupt the proceedings and cause a mistrial. Indeed, the carefully worded affidavit of the psychiatrist does not claim that he has an opinion that Mirra's mental health was impaired at the time of the chair throwing, but asserts that it could then have been tested. In these circumstances we cannot say that the judgment of the Court, based on his own observations, Mirra's reactions and statements, constituted error depriving Mirra of a fair trial. Here the judge had observed Mirra for months, no claim of a history of mental illness or other cause for the chair throwing was asserted, Mirra's conduct prior thereto and thereafter was not irrational, and his own later statements indicated that he did know what was going on and ascribed his own actions solely to hot-headedness.

Even if he were having difficulty following this short segment of a long trial, the witnesses heard were two women called by other defendants impeaching a Canadian witness at the former trial whose testimony was read in this trial, on matters as to which it is not claimed that Mirra had any knowledge, and no issue was raised on direct appeal of any bolstering of their testimony by questioning of those witnesses which would have been suggested to counsel by Mirra had he not been, as he claims, in "a fog." Compare Kyle v. United States, 266 F.2d 670, 672 (2d Cir.), cert. denied 361 U.S. 870, 80 S.Ct. 131, 4 L.Ed.2d 109 (1959); Sanders v. United States, 230 F.2d 127 (4th Cir.), cert. denied 351 U.S. 955, 76 S.Ct. 852, 100 L.Ed. 1478 (1956); United States v. Walker, 197 F.2d 287 (2d Cir. 1952).

■■ On a § 2255 motion, the judge must determine whether a hearing is required. Here the judge had available the record of the trial and of his own observations. The matter which appellant contends required a hearing consists of the affidavit of Dr. Helfand. Assuming the truth of this document, however, there is no basis for a hearing on incompetence at trial on June 4 and 5, 1962. It merely raises a possibility that a psychiatrist examining Mirra at the time, told he'd twice banged his head in his youth, was once rejected for wartime maritime service for emotional instability and was later accepted by the army, had taken the actions he had in court in both trials, would have formed an opinion at variance with the opinion of the judge, that Mirra was shamming. This falls short, it seems to us, of sufficient showing to require a hearing. There is no claim that an examination now could in fact determine what Mirra's condition was on June 4 and 5. The issue was tried then and determined against him, and nothing material is added to the record of that trial. We are not required, on any such showing, to find error in determining on the record, that there was no error requiring relief under § 2255 in the determination of the trial judge that the episode was deliberate obstruction, not calling for delay in the trial for a hearing.

We find no error on the alternate ground, the ruling on the motion to disqualify.

■ Any opinions formed for or against a party by reason of the evidence and observed conduct before a judge in a judicial proceeding, and the judge's expressions of such opinions, however vigorous, are not the personal "bias and prejudice" required to disqualify a judge

under the statute.  Foster v. Medina, 170 F.2d 632 (2d Cir. 1948), cert. denied 335 U.S. 909, 69 S.Ct. 412, 93 L.Ed. 442 (1949).

And the fact that personal observations by the judge on trial necessarily enter into his rulings is not cause for disqualification.  Indeed, one of the purposes of § 2255 was to make use of such knowledge of the trial occurrences in passing on attacks on convictions because of such occurrences.  United States v. Smith, 337 F.2d 49, 53, (4th Cir. 1964), cert. denied 381 U.S. 916, 85 S.Ct. 1542, 14 L.Ed.2d 436 (1965).

We find no error in the refusal of Judge MacMahon to disqualify himself from hearing the § 2255 motion.  There is no showing of any personal animus of the judge toward this litigant.  Orders affirmed.