Bernarr ZOVLUCK, Petitioner-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 982, Docket 34304.

United States Court of Appeals,
Second Circuit.

Argued June 10, 1971.

Decided Aug. 25, 1971.

Irving L. Weinberger, New York City, for petitioner-appellant.

Richard A. Givens, Sp. Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. of Southern District of New York, David V. Keegan, Asst. U. S. Atty., of counsel), for defendant-appellee.

Before FRIENDLY, Chief Judge, and HAYS and OAKES, Circuit Judges.

OAKES, Circuit Judge:

Appellant seeks by a motion under 28 U.S.C. § 2255 to set aside an April 22, 1968, conviction. The conviction was for mail fraud and fraudulent use of the initials "U.S." in violation of 18 U.S.C. §§ 1341 and 712 in connection with a clever chiropractic solicitation and collection scheme in 1966 and 1967, that bilked thousands of patients per year. The § 2255 motion is based on a claim, made first on May 23, 1969, of mental incompetence to stand trial. The motion was denied without prejudice, later renewed and, after an evidentiary hearing held on September 18, 1969, was denied by the court below.

Appellant's proof in support of his motion consisted principally of the testimony of three witnesses: a psychiatrist, Dr. Mertz; appellant's attorney at his fraud trial, Anthony Atlas, Esq.; and one Lewis Capp, who testified as a defense witness at the fraud trial. Appellant also submitted a Veterans Administration report dated May 23, 1969, but referring to a 1950–51 King's Park hospitalization, where appellant was diagnosed as having dementia praecox. In addition, appellant sought production of records from the federal medical facility at Springfield, Missouri, where he has been detained following his conviction. At the evidentiary hearing the Government produced three witnesses: a quackery investigator for the Arthritis Foundation; a television news reporter who had accompanied the investigator to interview appellant; and a postal inspector who had witnessed appellant's behavior at his fraud trial.

The court below found that (1) certain 1950–55 medical records of the VA were remote and medically unrelated to the issue here; (2) appellant had feigned his appearance at a 1968 VA neuropsychiatric examination; (3) appellant's psychiatrist's testimony was "confused, conflicting and vague," and basically not credible; (4) appellant's trial attorney's testimony was based on hearsay attributable to appellant, his sister or others; (5) the testimony of appellant's witness, Capp, was "not credible"; and (6) no useful purpose would be served by subpoenaing the Springfield facility's records which postdate the trial and conviction.

Appellant makes the following claims on appeal:

1. The district court should have required production of the records of the Springfield facility;

2. The district court should have required the presence of appellant at the evidentiary hearing;

3. The district court should have appointed a psychiatrist to determine competence (a) prior to sentencing and (b) in the course of the § 2255 proceeding;

4. The denial of the motion was not based on any medical evidence;

5. The trial judge should have disqualified himself.

Appellant then asks this court to set aside the conviction and order a new trial, on the strength of Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed. 2d 815 (1966) and Rhay v. White, 385 F.2d 883 (9th Cir. 1967). Appellant does this, despite the fact that the psychiatrist who testified below saw him first in May 1968, shortly after his conviction, and continued to see him while he was appealing that conviction, unsuccessfully, to this court.[1] Why, after receiving the psychiatrist's report, he did not move us for a remand so that he could present his psychiatric case to the district court, with subsequent review here, is hard to fathom. Had he done so, he could have avoided the inference that this is a case where a direct appeal has been "deliberately by-passed" within Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); such a circumventing of orderly procedure—despite the holding of Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969)—would justify our refusal to exercise our power to adjudicate the merits of appellant's claims as much in this, a federal § 2255 proceeding, as in state habeas cases. See 394 U.S. at 220 n.3, 89 S.Ct. 1068. But we will consider the merits here in any event, giving the appellant a second bite at the cherry, so to speak, despite the lapse of time since his conviction which—ironically enough—he now seeks to use to his own benefit, by claiming it as a ground for our granting a new trial, as opposed to a mere remand on the § 2255 hearing.

Even on the merits, however, appellant's claim must fall.

■■ We, of course, must accept the trial court's findings on this habeas corpus petition unless they are clearly erroneous. Rule 52(a), Fed.R.Civ.P.; United States ex rel. Wissenfeld v. Wilkins, 281 F.2d 707, 713 (2d Cir. 1960). There is no doubt but that appellant had the burden of proof. Johnson v. Zerbst, 304 U.S. 458, 468–469, 58 S.Ct. 1019, 82 L. Ed. 1461 (1938); Papalia v. United States, 333 F.2d 620, 621 (2d Cir.), cert. denied, 379 U.S. 838, 85 S.Ct. 74, 13 L. Ed.2d 45 (1964). See also Mirra v. United States, 379 F.2d 782, 787 (2d Cir. 1967).

■■ Our review of the record satisfies us that the district court was not clearly in error in denying the petition. The trial court very wisely held an evidentiary hearing. See United States v. Miranda, 437 F.2d 1255, 1258 (2d Cir. 1971). See Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); and Nelms v. United States, 318 F.2d 150, 154 (4th Cir. 1963).

On this hearing the appellant's psychiatrist, who did not start treating him until after he was convicted, in May 1968, testified on direct that the appellant was suffering from a "markedly regressed type of catatonic schizophrenia with depressive psychoses," one symptom of which was his slumped-over "embryonic" posture. The doctor went on to say that in his opinion appellant did not "have the emotional or mental capacity to conceive any type of plan," and that this was "a long-existing condition." On cross, Dr. Mertz elaborated, testifying in substance that appellant was mentally incapable of doing the very things he had done—for example, advertising his services, telling patients how he could cure arthritis. The court below recalled that at the time of the fraud trial appellant was in anything but the "embryonic," slumped-over, down-cast position he was in when examined by Dr. Mertz.

The appellant's attorney who had represented him at the fraud trial testified at the evidentiary hearing also, to the effect that he had been "at the very least eccentric" and "offbeat," ate six or seven grapefruit for lunch, greeted even total strangers effusively, and had placed an unusual ad in an East Village newspaper advertising himself as a sex-

---

1. His appeal was affirmed from the bench on April 7, 1969, Docket Nos. 32652–58 (2d Cir.).

ual partner for women. The attorney testified that while appellant "was able to assist" in the preparation for his trial and the trial itself, he was unable to understand why he was prosecuted. However, the attorney said it had not occurred to him that appellant was insane or otherwise mentally incompetent, and he had never suggested to the court that any investigation of appellant's competence should be made.

Appellant's third witness at the evidentiary hearing below was an employee of the chiropractic clinic who had also testified for the appellant at the latter's fraud trial. He testified that appellant would listen to the Bible with a stethoscope, saying that he heard the words coming from God and that God told him to treat people if they would pray with him.[2] Appellant, according to this witness, ate grass, wouldn't talk, and didn't testify at his trial because the prosecutor went to the men's room and came back without washing his hands. The witness recollected his own testimony at the fraud trial, however, that when appellant lectured or went on television (e. g., the Johnny Carson Show), the clinic switchboard would "light up like a Christmas tree"; that appellant gave instructions not to embarrass people on welfare; and that he had utilized thirty-odd spots a day on the radio.

The court below was of the view that the appellant was a confidence man and a "consummate actor," and that his eccentricities were designed to create an "image."

At the evidentiary hearing the Government's witnesses, a quackery investigator and a TV reporter, testified they went to appellant's office on February 28, 1969, ten months *after* his conviction, while he was on bail, and a month before he first advanced his claim of incompetence; that appellant was tall, erect, very well dressed, very confident, said that he could help the witness's ar-

thritis, and looked directly at the witness; that the witnesses could hear phones ringing and being answered in an adjacent room; that appellant told one witness that he treated the "whole body, the whole person," had hundreds of serious cases of arthritis and "was able to get results in every one."

Outside the courtroom at the time set for his sentencing in May 1969, appellant was, according to a postal inspector who testified at the evidentiary hearing below, erect, actively conferring with counsel for an hour, striding normally; inside the courtroom, however, appellant walked in mincing steps, on his toes, assumed a blank, fixed expression, with bent head; on leaving the courtroom after receiving a continuance he was smiling and striding down the hall. All this, of course, was months after Dr. Mertz had first examined appellant and found "progressive" catatonic schizophrenia, with the patient in a "markedly regressed deteriorated condition," featuring his withdrawal from reality, hallucinations, being practically mute, speaking to God, an "embryonic" posture, and incapability of understanding.

The record below, in our view, adequately supports the court's findings and conclusions above stated. Appellant was able to deceive the VA examiner and, perhaps, Dr. Mertz, for he was still operating his confidence game long after his mental condition supposedly had deteriorated to a marked degree. This being true, production of the federal records at Springfield would have served no useful purpose.

■ Nor do we think the court below need necessarily have ordered a psychiatric examination on its own. No request was made below; no useful purpose would have been served in view of the sham evident behind appellant's claim. The question is one of discretion, Rice v. United States, 420 F.2d 863, 865–866 (5th Cir. 1969), cert. denied,

2. In point of fact, this perhaps was not inconsistent with one of appellant's dunning letters admitted as a Government exhibit

in the fraud case, which said "God can do anything, pray, and God will give you the money to pay your overdue bills."

398 U.S. 910, 90 S.Ct. 1705, 26 L.Ed.2d 70 (1970), and we do not think appellant made the necessary showing. United States v. Miranda, 437 F.2d 1255 (2d Cir. 1971); Nelms v. United States, 318 F.2d 150 (4th Cir. 1963). This case is unlike Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), Rhay v. White, 385 F.2d 883 (9th Cir. 1967), or People v. Mulooly (App.Div.), 322 N.Y.S.2d 7, where the defense of insanity had been raised at the original trial but the question of competence to stand trial was overlooked. Here the court below found that the whole question of competence was an afterthought, indeed was "spurious." Moreover, appellant's competence was shown by contemporaneous evidence of the course of his conduct, better evidence perhaps than a new examination would show in view of appellant's apparent ability to feign.

■ Appellant's other claims are totally without merit. There was no need for appellant's presence at the evidentiary hearing below. 28 U.S.C. § 2255. See Machibroda v. United States, 368 U.S. 487, 495, 82 S.Ct. 510, 7 L.Ed. 2d 473 (1962). The district judge was never asked to disqualify himself, United States v. Sansone, 319 F.2d 586, 587 (2d Cir. 1963); 28 U.S.C. § 455. A reading of the entire record indicates that the court below used the utmost of care and restraint in the hearing. Not only is it not a ground for disqualification that the trial judge also handled the original trial and sentence, United States v. Delsanter, 433 F.2d 972 (2d Cir. 1970), Mirra v. United States, 379 F.2d 782, 787–788 (2d Cir. 1967), but his recollection and observation, checked against the record and memory of counsel, as they were here, may be a valuable aid to a § 2255 determination.

■ Appellant's final point is that, at least before sentencing, the trial court should have ordered a competency hearing, arguing that the judge was apprised of appellant's "bizarre behavior" during the trial and "facts in the proba-

tion report suggesting the need for psychiatric help," and that appellant informed the court of his medical discharge from the army and psychiatric care he had received later. But appellant's trial behavior, including his walking out of the courtroom to greet witnesses and his "God can do anything" letter, was entirely consistent with his scheme and "colorful" personality. There is nothing in this record to show that the probation report, or facts in it, suggested a need for psychiatric evaluation. The appellant's own statement just prior to sentencing as to his past psychiatric care was not enough to warrant a competency hearing before sentence.

We affirm the judgment below.