UNITED STATES of America,
Appellee,

v.

Morris HALL, Appellant.

No. 556, Docket 74–1938.

United States Court of Appeals,
Second Circuit.

Argued Jan. 10, 1975.

Decided June 24, 1975.

Jesse Berman, New York City, for appellant.

Steven A. Schatten, Asst. U.S. Atty., New York City (Paul J. Curran, U.S. Atty., Frederick P. Schaffer and Lawrence S. Feld, Asst. U.S. Attys., New York City, on the brief), for appellee.

Before SMITH, OAKES and TIMBERS, *Circuit Judges.*

TIMBERS, *Circuit Judge:*

On this appeal from a bank robbery conviction after a five day jury trial in the Southern District of New York before Charles E. Stewart, Jr., *District Judge,* the only claim of error that warrants even this brief opinion is the asserted abuse of discretion on the part of the trial judge in refusing on the third day of the trial to order a psychiatric examination of defendant to determine his competence to stand trial. Other claims of error are raised. We affirm.

I.

On January 25, 1973, Morris Hall entered the Security National Bank at 84th Street and Madison Avenue in Manhattan. After talking with the head teller, he ordered her to fill a brown paper bag with money. She pulled the alarm and started to fill the bag. Hall produced a gun and told her to hurry up. She put $27,078 in the bag, including $500 in bait money. When a bank guard approached Hall to find out what the trouble was, Hall disarmed the guard and kept his gun. Shortly after the robbery, four men (not including Hall) brought into the bank a brown paper bag containing money, among which was $480 of the bait money. Two of Hall's fingerprints

were on the brown paper bag. The head teller and another teller provided eyewitness identification of Hall at the trial.

On April 13, 1973, Hall was arrested in a luncheonette for menacing another man with a gun. This gun turned out to be the one Hall had taken from the bank guard on January 25. Hall stated, falsely, that he had bought it for $50.

On May 31, 1973, while Hall was in custody at Riker's Island on a New York State charge and after receiving the warnings required by *Miranda* v. *Arizona,* 384 U.S. 436 (1966), he gave a statement to FBI agents. In his statement, he provided the details of his robbery of the bank. He explained that the bag containing the money had broken while he was escaping. This forced him to leave it on the street with some of the money still in it. He admitted that the gun found in his possession when he was arrested in the luncheonette on April 13 was the one he had taken from the bank guard during the robbery on January 25.

On August 17, 1973, Hall was indicted on one count of bank robbery in violation of 18 U.S.C. § 2113(a) (1970). After evidentiary pre-trial suppression hearings in January 1974, his motions to suppress were denied. He was tried before Judge Stewart and a jury beginning February 13. The jury returned a guilty verdict on February 21. Judge Stewart on March 18 sentenced him to the custody of the Attorney General for a study, report and recommendation pursuant to 18 U.S.C. § 4208(b) and (c) (1970). After receiving and studying the report and recommendation, Judge Stewart on July 3, 1974 sentenced Hall to a term of 15 years imprisonment, with a recommendation that the government provide a period of community supervision after his release.

## II.

Since Hall on appeal does not challenge the sufficiency of the evidence to sustain his conviction and we find that evidence to be overwhelming, we turn directly to what we consider to be the only issue that warrants brief discussion—the refusal of the court to order a psychiatric examination to determine Hall's competence to stand trial.

Since this is a matter which necessarily rests in the sound discretion of the district court, we note at the outset that we find it difficult to fathom from the record whether Hall's counsel ever did make a motion for a psychiatric examination addressed to the district court. On appeal his counsel argues that certain statements made by him on the third day of the trial should be construed as a motion for a psychiatric examination pursuant to 18 U.S.C. § 4244 (1970).

What Hall's counsel brought to the attention of the court on the third day of the trial was essentially this: that Hall had been confined from December 10, 1971 to February 8, 1972 at the Matteawan State Hospital where he had had a psychotic episode from which he had recovered; that several days prior to the first day of trial, due to an altercation, Hall had been transferred from the Tombs to the Riker's Island Hospital; and on the third day of the trial, Hall had appeared in court disheveled, was in handcuffs and leg-irons, and refused to communicate with his counsel.

■  Upon analysis, we hold that this information, in the context of the entire record, did not constitute "reasonable cause to believe" that Hall was "so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense." 18 U.S.C. §4244.

With respect to the Matteawan State Hospital confinement, the clinical summary report upon which Hall's counsel on appeal relies so heavily was specifically *not* offered below on the issue of Hall's competence to stand trial. Indeed, his counsel made this very clear at the time he offered it at trial when he said, "I am not offering it as to his com-

petence to stand trial."[1] This had been the position consistently taken by Hall's counsel in his representations to the court. Just two weeks earlier, in a letter to the court dated February 1, 1974, Hall's counsel had stated to Judge Stewart, "I absolutely do not intend to raise any claim that Mr. Hall is not competent to stand trial." At that time, counsel of course knew of the Matteawan clinical summary report.

As for the transfer to Riker's Island, there was no evidence to support the statement by Hall's counsel to the court on the first day of the trial that Hall was being held in a *psychiatric ward* there. The court did have a letter from Dr. Spaulding, a "referring physician" at the Riker's Island Hospital, which stated:

> "MS on admission—alert, oriented, articulate. Calm, coherent, no thought disorder. No change in his condition today. No psychosis. Defiant inmate. Okay to go to court today psychiatrically."

Hall's counsel at that time raised no question as to Hall's competence to stand trial.

The explanation for Hall's disheveled appearance on the third day of the trial appears in Dr. Spaulding's letter to the court referred to above. The doctor stated that Hall had refused to go to court because he could not get a shave and complained that there were no mirrors. In denying counsel's request that Hall be examined, the court informed Hall directly that shaving facilities would be provided at the courthouse and gave Hall time to straighten up his appearance before trial resumed. The court urged Hall to comport himself properly while in court as he had done on the two previous days of the trial.[2]

The statute, 18 U.S.C. § 4244, under which Hall's counsel argues on appeal that he sought a psychiatric examination on the third day of the trial, is designed to safeguard against proceeding with a criminal trial of an incompetent; it does not require that such an examination be ordered whenever one is requested. As the court in *United States v. Taylor,* 437 F.2d 371, 376 n. 7 (4 Cir. 1971), recognized, it would be a misuse of the statute to grant such motions "so routinely that the statute amount[ed] to no more than a provision for an automatic continuation on the defendant's request." An examination is not to be granted *ex mero motu;* and an order for such an examination is not a perfunctory or ministerial act. *Hawks v. Peyton,* 370 F.2d 123 (4 Cir. 1966), *cert. denied,* 387 U.S. 925 (1967). Rather, the ordering of such an examination requires an exercise of judicial discretion to determine if there is "reasonable cause to believe" that the defendant may be incompetent. *United States v. Vowteras,* 500 F.2d 1210, 1212 (2 Cir. 1974), *cert. denied,* 419 U.S. 1069 (1975); *Zovluck v. United States,* 448 F.2d 339, 342–43 (2 Cir. 1971), *cert. denied,* 405 U.S. 1043 (1972); *Mirra v. United States,* 379 F.2d 782 (2 Cir.), *cert. denied,* 389 U.S. 1022 (1967).

A factual showing of reasonable cause should support the motion for such an examination. It is within the trial court's discretion whether to take evidence on the issues of fact, if any, raised by the motion. See *United States v. McEachern,* 465 F.2d 833, 837 (5 Cir.), *cert. denied,* 409 U.S. 1043 (1972). Where the allegations have been insufficient to establish the reasonable cause required by the statute, we have upheld the district court's denial of a § 4244 examination. *United States v. Marshall,* 458 F.2d 446 (2 Cir. 1972); *Mirra v.*

---

1. The Matteawan State Hospital clinical summary report was offered at the pre-trial suppression hearing solely on the issue of Hall's capacity voluntarily to waive his rights at the time of his Riker's Island statement.

2. Counsel's request for an examination and the court's subsequent discussion with Hall took place in the absence of the jury.

*United States, supra* ; *United States* v. *Knohl,* 379 F.2d 427 (2 Cir.), *cert. denied,* 389 U.S. 973 (1967).

■ In the instant case, we hold that, upon the showing claimed to have been made by Hall's counsel in support of his request for a psychiatric examination on the third day of the trial, the district court did not abuse its discretion in denying the request. See *United States ex rel. Roth* v. *Zelker,* 455 F.2d 1105, 1108 (2 Cir.), *cert. denied,* 408 U.S. 927 (1972).[3] Moreover, as in *Mirra* v. *United States, supra,* 379 F.2d at 787, and *United States* v. *Marshall, supra,* 458 F.2d at 450, the correctness of the court's denial of the request for a § 4244 examination here is confirmed by the court's observation thereafter that Hall was able to understand the nature of the proceedings and to cooperate in the presentation of his defense.

We have carefully consider Hall's other claims of error and find them without merit.[4]

Affirmed.

**3.** Our decision in *United States* v. *Polisi,* 514 F.2d 977, 980 n. 4 (2 Cir. 1975), is not to the contrary. In reversing and remanding for either a § 4244 examination or a hearing, we recognized that the facts in *Polisi* were distinguishable from those in *United States* v. *Vowteras, supra.* Likewise here, we hold that the facts presented, in the context of the entire record, did not constitute reasonable cause to believe that Hall was incompetent to stand trial.

**4.** Among his other claims is that the district court erred in refusing after an evidentiary hearing to suppress the gun taken from a bank guard at the time of the robbery which later was recovered from Hall at the time of his arrest on state charges. This claim is foreclosed by the Supreme Court's decisions in *Adams* v. *Williams,* 407 U.S. 143 (1972), and *Terry* v. *Ohio,* 392 U.S. 1 (1968). Such a search and

seizure is proper when the officers investigating an individual's suspicious behavior have reason to believe that he is armed and poses a threat to their safety. *United States* v. *Santana,* 485 F.2d 365 (2 Cir. 1973), *cert. denied,* 415 U.S. 931 (1974).

Likewise without merit is his claim that a statement made by him to FBI agents after he was advised of his rights under *Miranda* v. *Arizona, supra,* was obtained in violation of his Sixth Amendment right to counsel. Since there was no coercion or deception and Hall waived his right to counsel, the agents were not required, before taking his voluntary statement, to seek out the attorney who had been appointed to defend Hall against the state charges on which he was being held. See *United States* v. *Diggs,* 497 F.2d 391 (2 Cir. 1974), *cert. denied,* 419 U.S. 861 (1975); *United States* v. *Barone,* 467 F.2d 247, 249 (2 Cir. 1972).