Ciro **RICCARDI**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

No. 76 C 2190.

United States District Court,
E. D. New York.

March 24, 1977.

---

Ciro Riccardi, pro se.

David G. Trager, U.S. Atty., Brooklyn, N.Y., by Stanley Greenidge and Allan K. Sleppin, Sp. Attys., Brooklyn, N.Y., for respondent.

MEMORANDUM AND ORDER

PLATT, District Judge.

Petitioner has filed, *pro se,* a motion to vacate, set aside, or correct a sentence imposed upon him by this Court. Title 28 U.S.C. § 2255.

On May 29, 1975, petitioner and a co-defendant, Ronald Gigliotti, were convicted after a jury trial of collecting and attempting to collect an extension of credit through the use of violence and threats of violence in violation of Title 18 U.S.C. § 894. On August 29, 1975, the date set for sentencing, Mr. James LaRossa, petitioner's trial counsel, advised the Court of a letter from Dr. Joseph Carlisi which had not been referred to in the presentence report or included among the other presentence materi-

als submitted to the Court.[1] The letter, dated June 20, 1975, stated that the petitioner had been under Dr. Carlisi's care since July 11, 1974, that he had in the past suffered from "acute anxiety, depression, feelings of futility and many psychosomatic complaints". The Doctor added that "he has told me recently that he is coming up for sentencing and there has been a complete relapse of the psychiatric condition that I worked so hard to control". Mr. LaRossa further advised the Court that Riccardi's psychiatric problems "go back to his early schooling".[2] Mr. LaRossa said, however, that: "I don't suggest to your Honor that in any way they rose to the level whereby Mr. Riccardi could have defended this action by insanity or any such thing. That is not the purpose of my submitting this to the Court."[3]

The Court, concerned over the revelation of the petitioner's prior psychiatric history, sentenced him on Count Two of the indictment to twenty years imprisonment and ordered a psychiatric study pursuant to Title 18 U.S.C. § 4208(c). The Court stated that the sentence was subject to modification in accordance with Title 18 U.S.C. § 4208(b).

Free on bail and apparently anticipating a sentence modification, petitioner voluntarily visited Dr. Train on November 25, 1975. Dr. Train reported in a letter dated February 2, 1976 that petitioner "had full factual and rational understanding of his legal position", had "no delusions or hallucinations", was "oriented fully and his memory was intact", and "his judgment is not grossly impaired". Dr. Train concluded that "there is no evidence of this man being a sociopathic personality and no history of any significant anti-social behavior." Dr. Train recommended that the petitioner be placed on probation.

On January 5, 1976, petitioner was committed pursuant to the Court's sentence, to the Federal Medical Center for Federal Prisoners at Springfield, Missouri, where he began psychiatric examination and testing under Alan Weible, Case Manager, James M. Doolos, M.D. and Staff Psychiatrist, Emory Varhely, Ph.D., and Chief of the Psychology Service, and Delane Kinney, Psychologist Intern.

Mr. Weible's report showed that the petitioner was functioning in the bright-normal range of intelligence, and was "a normal healthy male", with a "mild neurosis." Mr. Weible concluded that "there is no evidence of any psychosis at this time."

Doctor Doolos' report stated that the petitioner's behavior was "within normal limits," that he was "coherent, relevant, and logical, . . . has no delusions and no hallucinations" and that his "orientation is good to time, place, and person." Doctor Doolos concluded that there was no evidence of any psychosis and recommended no medication.

Dr. Varhely and Delane Kinney's report stated that a battery of psychological tests administered to the petitioner reflected that he was "tense, restless, fretful, and overly fatigued" and that he was depressed and anxious. The report concluded that "Mr. Riccardi evidences no signs of a psychotic disorder or an antisocial personality disorder", and that his symptoms "have probably been exacerbated by current situational stress."

After the psychiatric study was completed, the petitioner was returned to New York for further proceedings. Again, apparently at his own request, petitioner was examined for the second time by Dr. John Train who reported in a letter dated April 14, 1976 that "at this time, as expected, his mental state is aggravated with agitated depression and anxiety". Dr. Train stated that the petitioner had described his experience in prison as "a nightmare". Dr. Train concluded that "it is my considered opinion

---

1. The presentence report mentioned that the petitioner had seen a school psychologist at the age of fifteen for approximately one year, but that he had told the interviewer that he had never been treated for psychiatric problems.

2. Tr. p. 6.

3. Tr. p. 7.

that he is not a psychopathic anti-social person and not a threat to society" and requested that the petitioner be placed on probation.

However, on April 19, 1976, while awaiting removal to the Court, the petitioner attempted suicide by hanging. When the Court was made aware of this incident, it adjourned the proceeding and on April 23, 1976, ordered another psychiatric examination of petitioner by Dr. Edward Falsey, an independent psychiatrist agreeable to the defense and to the prosecution.

Dr. Falsey detailed his findings in a letter to the Court dated May 25, 1976. He stated that he relied on the prior psychiatric reports and his own interviews with the petitioner in reaching his conclusion that the petitioner was suffering from "ganser syndrome". Dr. Falsey said that symptoms of the illness include a "mild degree of mental defect and hysterical symptoms of various kinds such as amnesia." He said that "the writers emphasize that [ganser syndrome] may be confused with voluntary malingering in prisoners who want to escape indictment."

On May 28, 1976, after considering all of the aforementioned reports, this Court modified the petitioner's sentence to eight years in prison pursuant to Title 18 U.S.C. § 4205(b)(2) and recommended that he be given further psychiatric help. In accordance with this recommendation and special arrangements made by the Court, petitioner was committed to the psychiatric ward of the Federal Correctional Institution at Danbury, Connecticut. The chief of the psychiatric service of that institution, Dr. Frank A. Jones, Jr. reported in a letter to the Court dated August 26, 1976, that the petitioner showed no evidence of psychosis or depression. Dr. Jones agreed with Dr. Falsey that the petitioner suffered from ganser syndrome, which he stated was described as an "adjustment reaction of adult life" and which he said is "frequent in prisoners". A second letter was submitted by Dr. Jones dated October 26, 1976, calling to the Court's attention a disciplinary infraction committed by the petitioner.

After receiving the reports of Dr. Jones, and upon reconsideration of the facts of the case, this Court on December 21, 1976 further reduced the petitioner's sentence to six years imprisonment pursuant to Rule 35, Federal Rules of Criminal Procedure.

Petitioner argues herein that "he was insane" at the time of his trial and sentencing and that this Court's failure to hold a competency hearing prior to sentencing now entitles him to such a hearing.

In *United States v. Miranda,* 437 F.2d 1255 (2d Cir. 1971), *cert. denied,* 409 U.S. 874, 93 S.Ct. 207, 34 L.Ed.2d 126 (1972), the Court held that a District Court must hold a hearing pursuant to § 2255 whenever a claim of mental incompetence at the time of trial is made if the movant has raised detailed and controverted issues of fact. The petitioner in *Miranda* claimed that he was under "heavy narcotic sedation" when he was brought to Court and pleaded guilty. The District Court without a hearing refused to order a mental examination pursuant to Title 18 U.S.C. § 4244 [4] relying on (1) the

---

4. The Statute provides:

"Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may order the accused committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the men-

medical records of the West Street Detention Facility and the Rikers Island Prison Hospital which showed that Miranda had been found "not psychotic"; (2) the fact that he appeared coherent at the time of his plea and sentence; and (3) the presentence report which indicated that he was "relevant coherent, and direct, showing a remarkable memory for dates and events in his life." The Court of Appeals reversed the denial of the application without a hearing, holding that the records did not conclusively show that the prisoner was entitled to no relief. A number of cases have similarly ordered a hearing in cases where the facts did not conclusively show that the prisoner was entitled to no relief. *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); *Fontaine v. United States,* 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973); *Taylor v. United States,* 487 F.2d 307 (2d Cir. 1973); *Saddler v. United States,* 531 F.2d 83 (2d Cir. 1976).

Most recently, in *Wojtowicz v. United States,* 550 F.2d 786 (2d Cir. 1977), the Court ordered a hearing where the petitioner claimed that on the morning of the sentencing he attempted to take a drug overdose and slashed his wrists and thus could not comprehend the sentencing proceedings. The Court said that affidavits submitted by the petitioner's attorney and his family somewhat supported this claim. The Court held (at p. 790) that:

> "the apparent regularity of the proceedings cannot 'conclusively show' that appellant's claim, *which is based on facts outside the record, is without merit."* (Emphasis added)

Numerous other cases in this Circuit have considered when a Federal trial Court is required to hold a hearing pursuant to § 4244 to decide the question of the competency of a defendant.[5] In *United States v. Knohl,* 379 F.2d 427 (2d Cir.), *cert. denied,* 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967), the trial Court was presented with a letter from a doctor which said that the defendant's physical and mental condition would make "difficult, and very likely pointless, proper consultation with his counsel". The defendant also submitted to the Court affidavits from his attorney and himself stating that he had suffered a loss of memory. The Court appointed a second doctor, whom both sides accepted but who was not a psychiatrist, to examine the defendant. The doctor reported that the defendant was "well oriented, alert and responsive". The District Court refused to hold an evidentiary hearing on the competency issue. The Court of Appeals, in affirming the order of the District Court, said (at p. 436) that the affidavits and report of defendant's doctor were "entirely conclusory and furnished no factual basis whatever for his assertion that Knohl's mental condition made 'proper consultation with his counsel in preparation of his case extremely difficult' ".

In *Mirra v. United States,* 379 F.2d 782, 787 (2d Cir.), *cert. denied,* 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 (1967), the Court held that where the trial Judge observed

---

tal condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto. No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding. A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury."

This Statute requires of the Federal Courts what *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) and *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) require of the state courts: an inquiry into a defendant's competency whenever there is reasonable cause to believe that the defendant is incompetent.

5. An accused has sufficient mental capacity to stand trial if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and . . . has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

the defendant throughout the trial and concluded that the defendant was not incompetent, despite the submission of an affidavit of a psychiatrist that a psychiatric examination was called for, and despite the fact that the defendant's attorney was convinced that there was genuine difficulty in communicating with the defendant during a two day period of the trial, the Judge did not err in refusing to hold a hearing on the issue of the defendant's competency.

In *United States v. Sullivan*, 406 F.2d 180, 185 (2d Cir. 1969), the trial Court, at the request of the defense, committed the defendant to a hospital for a psychiatric evaluation. The report of the psychiatrist indicated that the defendant was "oriented for time and place" and that he "has no overt psychotic ideation", although the report concluded that the defendant's "insight and judgment are poor". The trial Court ordered a second psychiatric examination by another doctor. The report of the second doctor said that the defendant "suffers from an underlying mental and emotional disorder, with a history of psychological disturbance", but concluded that the defendant was capable of assisting in his own defense. The trial Court denied a request for a hearing to determine the defendant's competency. The Court of Appeals, relying on the reports and the observations of the trial Judge, affirmed the denial of the requested hearing.

In *United States v. Currier*, 405 F.2d 1039 (2d Cir.), *cert. denied*, 395 U.S. 914, 89 S.Ct. 1761, 23 L.Ed.2d 228 (1969), the Court held that the record in that case showed insufficient evidence to require a hearing as to the defendant's mental competence where the defendant stated that he was "confused" and suffered memory lapses. The Court relied on two psychiatrists' reports indicating that the defendant was neither psychotic nor suffered from neurological abnormalities.

In *United States v. Marshall*, 458 F.2d 446 (2d Cir. 1972), the Court of Appeals held that where the trial Court had before it two psychiatric reports indicating that the defendant was competent and had observed the defendant during the trial, it did not err in failing to regard his behavior as providing reasonable cause to believe him incompetent.

In *United States v. Hall*, 523 F.2d 665 (2d Cir. 1975), the defendant's counsel requested on the third day of trial a psychiatric examination pursuant to § 4244. The Court was informed that the defendant had been confined for a short period to a mental hospital where he had a psychotic episode, that several days prior to the commencement of the trial the defendant had been transferred from the Tombs to the Rikers Island Hospital, and that on the third day of trial he had appeared in Court looking disheveled and had refused to communicate with his attorney. The Court of Appeals affirmed the District Court's denial of the attorney's request, declaring that the record did not constitute reasonable cause to believe that the defendant was incompetent. With respect to the prior commitment to the mental hospital, the Court noted that the defendant's counsel had told the Court that "I am not offering it as to his competence to stand trial."

The Court of Appeals has reached similar results in reviewing applications for writs of *habeas corpus* filed by state prisoners alleging error by a State Court in denying similar hearings. *United States ex rel. Rizzi v. Follette*, 367 F.2d 559, 560 (2d Cir. 1966); *United States ex rel. Evans v. LaValle*, 446 F.2d 782 (2d Cir. 1971), *cert. denied*, 404 U.S. 1020, 92 S.Ct. 691, 30 L.Ed.2d 668 (1972); *United States ex rel. Roth v. Zelker*, 455 F.2d 1105, 1108 (2d Cir.), *cert. denied*, 408 U.S. 927, 92 S.Ct. 2512, 33 L.Ed.2d 340 (1972).

These cases make clear that neither § 4244 nor § 2255 require a competency examination or an evidentiary hearing whenever one is requested. As the Court recognized in *United States v. Hall, supra*, (at p. 667):

An examination is not to be granted *ex mero motu;* and an order for such an examination is not a perfunctory or ministerial act." *Hawks v. Peyton*, 370 F.2d

123 (4th Cir. 1966), *cert. denied,* 387 U.S. 925, 87 S.Ct. 2044, 18 L.Ed.2d 982 (1967). The decision to grant or deny such a request requires an exercise of judicial discretion. *United States v. Hall, supra.*

Applying these principles and the standards adopted in the cited cases, the Court finds no error in its failure to hold a hearing *sua sponte* to determine the petitioner's competency prior to trial or sentencing and declines to order such a hearing at this time since "detailed and controverted issues of fact" are not raised by this petition. First, at no point during the trial did the petitioner through his attorney or the government raise the issue of his competency. While the failure of the petitioner to raise such a claim is not necessarily dispositive, see *Pate v. Robinson, supra,* 383 U.S. at 384, 86 S.Ct. 836, the Supreme Court observed in *Drope v. Missouri, supra,* 420 U.S. at pp. 176–177, 95 S.Ct. at 906,[6] that "judges must depend to some extent on counsel to bring issues into focus". Petitioner's counsel, a respected and skilled litigator did raise the issue at sentencing but stated that he did not think that the petitioner's condition was serious enough to justify its imposition as a defense.[7]

Second, the Court closely observed the petitioner during the pre-trial, trial, and sentencing stages of this case. At no time did he appear to be suffering from any psychological impairment that might have inhibited his ability to consult with his attorney. The Court observed petitioner consulting with his attorney on a number of occasions during the trial. As the case law makes clear, such observations are relevant to the determination of petitioner's competency during and after trial. *Zovluck v. United States,* 448 F.2d 339 (2d Cir. 1971), *cert. denied,* 405 U.S. 1043, 92 S.Ct. 1327, 31 L.Ed.2d 585 (1972); *Mirra v. United States, supra; United States v. Vowteras,* 500 F.2d 1210 (2d Cir.), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974); *United States v. Sullivan, supra; United States v. Marshall, supra;* Note, 81 Harv.L.Rev., at 469 (1967). Significantly, petitioner does not claim that he was under medication or addicted to drugs, nor does he raise other facts "outside the record" which might contradict the "apparent regularity of the proceedings." *Wojtowicz v. United States, supra.*

Third, as we have noted, the Court was provided with opinions from seven different psychiatrists, psychologists, caseworkers, and MDs all concluding that the petitioner was not psychotic or severely neurotic. Although these reports did not specifically refer to the legal standard of competency as outlined in § 4244, they were rife with references to the petitioner's "coherence" and his "full factual and legal understanding of his legal position". Such references show that the petitioner was fully capable of understanding the proceedings against him and conferring with his counsel.[8] The examination and reports sub-

---

6. The Supreme Court held in *Pate* that the defendant had not been accorded his Fourteenth Amendment right to a fair trial because the Illinois Court in which he was tried did not comply with an Illinois Statute which required the Court to conduct a sanity hearing where the evidence raised *bona fide* doubt as to the defendant's competence to stand trial. The Court said that the evidence was sufficient to raise that doubt and directed that a writ of *habeas corpus* issue. The issue of the defendant's capacity had been argued by the defendant and a substantial amount of evidence including the fact that the defendant had been committed to a mental hospital for eight months, had experienced delusions and loss of memory, had previously slain his infant son, had committed acts of violence on other persons and had committed other instances of bizarre behavior had been adduced at trial.

Similarly, the Supreme Court held in *Drope v. Missouri, supra,* that where evidence in a state trial showed that the defendant had previously attempted to choke his wife to death, subjected her to bizarre abuse and shot himself during the trial which occasioned the trial to continue without his presence, that a competency inquiry should have been conducted.

7. The Court cannot overlook the context in which the information was conveyed. The petitioner's counsel obviously hoped that this information would convince the Court to impose a lighter sentence.

8. Even Dr. Train, to whom the petitioner voluntarily submitted himself for diagnosis, concluded that he "had full factual and rational understanding of his legal position".

mitted in this case satisfied the requirements of the statute and clearly indicated a hearing was not and is not called for. The only report that suggested that the petitioner's faculties were impaired was the June 20, 1975 letter from Dr. Carlisi which gave rise to the Court's initial concern over the petitioner's mental well-being. However, the letter, like the report of the doctor in *United States v. Knohl, supra,* contained only conclusory allegations that the petitioner was suffering from "anxiety depression and other psychosomatic complaints". This medical analysis which was not explained or supported by factual information and which was refuted by the numerous doctors and other professionals who examined the petitioner after the letter was shown to the Court, was insufficient to require a § 4244 study or a hearing pursuant to § 2255.

Furthermore, the fact that the petitioner attempted suicide does not, contrary to petitioner's claim, necessarily signal "an inability to perceive reality accurately, to reason logically and to make plans and carry them out in an organized fashion." Greenberg, *Involuntary Psychiatric Commitments to Prevent Suicide,* 49 N.Y.U.L.Rev. 227, 234, 236 (1974); *Drope v. Missouri, supra,* 420 U.S. at 181 n. 16, 95 S.Ct. 896. In any event, the Court ordered a second psychiatric evaluation after the reported suicide attempt, which essentially concurred with the findings contained in the prior ones.

Petitioner's reliance on *United States v. Polisi,* 514 F.2d 977 (2d Cir. 1975), is misplaced. In *Polisi,* the presentence report submitted to the trial Court noted that the defendant had been discharged from the Marines after a diagnosis of "pericarditis . . . and emotionally unstable personality." The report also stated that:

"Defendant, as of April 3, 1974, has been receiving medication on an outpatient basis from the Veterans Administration, New York City. Their records indicate that the defendant has a service-connected- disability for chronic brain syndrome associated with trauma with psychotic (schizophrenic) reaction, one hundred percent disability from November 18, 1966."

The trial Court committed the defendant for study pursuant to Title 18 U.S.C. § 4208(b). At resentencing, the defendant's counsel was shown a copy of the study report which indicated that the defendant was a "chronic undifferentiated schizophrenic with a passive dependent personality disorder and with sociopathic tendencies" and prescribed heavy doses of Thorazine and Elavil, an antidepressant. The staff report also recommended psychotherapy. Relying on this information, the defendant requested that the Court order a study pursuant to § 4244. The District Court denied the application. The Court of Appeals reversed, holding that the information provided in the presentence and § 4208(b) study at least provided the reasonable cause required by § 4244.

*Polisi* is distinguishable from the instant case. The Court was careful to note (at p. 980) that:

"We by no means intend to indicate that a psychiatric examination conducted pursuant to a § 4208(b) commitment can never be taken to satisfy a defendant's subsequent request for a § 4244 study. In this case, however, Dr. Schmidt—for quite understandable reasons—made no attempt to relate Polisi's 'chronic undifferentiated schizophrenia', or the 'chronic brain syndrome associated with trauma with psychotic (schizophrenic) reaction' referred to in the presentence report, to his ability to understand and assist at the trial and sentencing proceedings."

The psychiatric problems outlined in the reports submitted to the Court in that case reflected that Polisi was suffering from substantial psychological stress including psychosis. In the case at bar, on the other hand, none of the seven professionals who examined the petitioner found him substantially impaired. Thus, reasonable cause did not and does not exist for a § 4244 study, nor is a § 2255 hearing required.

Furthermore, the Court in *Polisi* distinguished *United States v. Vowteras, supra,* a

case analogous to the one at bar. *Vowter-as,* as we have noted, relied principally on the District Court's observation of the defendant at trial and his long-standing business contacts in declining to hold that reasonable cause existed for believing the defendant incompetent. Similarly, in the case at bar, we rely in part on the Court's observation of the petitioner during the proceedings and on his regular employment record.[9]

Finally, in *United States v. Hall, supra,* the Court distinguished *Polisi* on facts somewhat analogous to those in the case at bar. *Id.* at 668 n.3. Again, the Court relied in part, as the Court does herein, on its observation of the defendant during the proceedings.

In summary, we conclude that the petitioner has failed to allege any new and sufficiently detailed factual allegations of which the Court was not aware at the time of resentencing. The record in this case is complete. The petitioner was examined by seven professionals all of whom concluded that he was not substantially impaired. Accordingly, a hearing is not required. See, *O'Neil v. United States,* 486 F.2d 1034 (2d Cir. 1973); *United States v. Falu,* 421 F.2d 687 (2d Cir. 1969); *United States v. Molino,* 240 F.Supp. 332 (S.D.N.Y.1965).

For the foregoing reasons, petitioner's application to vacate, set aside, or correct the sentence previously imposed upon him by this Court must be, and the same hereby is, denied.

SO ORDERED.

9. The presentence report showed that the petitioner was regularly employed as a "dispatcher" from 1971 to the date of his incarceration.