UNITED STATES of America,
Plaintiff-Appellee,

v.

William M. METCALFE, Jr.,
Defendant-Appellant.

No. 82–1112.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 29, 1982.

Decided Jan. 26, 1983.

Certiorari Denied April 25, 1983.
See 103 S.Ct. 1886.

Donald G. Weiland, Chicago, Ill., for defendant-appellant.

Terry G. Harn, Asst. U.S. Atty., Peoria, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, COFFEY, Circuit Judge, and HILL, Senior District Judge.*

* The Honorable Irving Hill, Senior District Judge for the Central District of California, is sitting     by designation.

IRVING HILL, Senior District Judge.

After a jury trial in which he was represented by appointed counsel, appellant Metcalfe was convicted of armed bank robbery of a Peoria, Illinois, bank and sentenced to 15 years in prison. He raises three contentions on appeal:

1. A "motion" for the appointment of a psychiatrist to examine Metcalfe prior to trial to determine his competency to stand trial was erroneously denied;

2. The government's use of testimony of a jail cellmate violated his constitutional rights as defined in *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); and

3. His representation by appointed trial counsel did not meet the minimum professional standard required under the Sixth Amendment.

We will discuss each contention separately.

## I. COMPETENCY TO STAND TRIAL

On the date set for trial of the case, Metcalfe appeared in chambers with his appointed counsel and government counsel for an on-the-record conference. Defense counsel told the court that 3 days before, the defendant had inquired of him about having a mental examination under 18 U.S.C. Sec. 4244, and he had told Metcalfe that he, counsel, did not feel that he could file such a motion in good faith. They had left it that Metcalfe wanted to think some more about the matter. Counsel said he was bringing it up again at the chambers conference because he wanted it clear on the record that Metcalfe did not want to raise the question any further. However, Metcalfe then told the trial judge that he wanted to talk about it some more. The court then asked Metcalfe if he wanted to

make some statement in regard to a possible mental examination. In reply, Metcalfe said that he was "emotionally unstable" and wanted his problem to be "recognized by the courts" so perhaps the court "could do something about it". He said that he had been in a mental institution before coming to Peoria. He said he was taken to that institution by his father because his mental problems went back into his childhood, but he did not know the name of the psychiatrist that they had seen because he was so young at the time. For further details, he referred the court to his father who was in the courtroom outside chambers. This colloquy between the court and Metcalfe is characterized by Metcalfe's present lawyer (who did not represent him at that time) as a "motion" under 18 U.S.C. Sec. 4244. The so-called motion was entirely oral.

In his colloquy with the judge, Metcalfe asserted that while he had had serious drug problems in the past, he had not been addicted to drugs since 1978 and had not "messed" with drugs in "quite some time".

Before summoning the father, the trial judge had a brief discussion with the defendant as to whether he understood the charge against him. That discussion revealed that the defendant clearly understood that he was being charged with a bank robbery and that he knew the elements and nature of the alleged robbery. Defendant had previously tendered an alibi defense and during the discussion, he complained that his defense had not been properly prepared, which he laid to the fact that he had been incarcerated and "[hadn't] had a chance to get in contact with anyone".

The trial judge then called the father into chambers and asked the father to describe the mental treatment given to defendant in the past. The father denied that there had been any. He said he had tried to get some mental treatment for his son but was unsuccessful because the son was over 21 and he, the father, was informed that treatment would not be provided unless the son himself asked for it. Apparently the son had declined to do so. The father did say that he continued to feel that his son needed a psychiatrist but gave no details whatever of any event or events which underlay that feeling.

The court then turned to defense counsel and sought from him an opinion as to whether the defendant was able to cooperate in conducting his defense. Defense counsel answered that he had not found the defendant unable to cooperate in planning his defense "and that is why I told him I cannot file it in good faith".

At this point, the trial judge said "I am going to deny the petition for a mental examination." He gave no further explanation of his ruling and made no further findings in connection with it.

We have concluded that no error was committed by the trial court in connection with the events related above. But it is appropriate to discuss the problem in some detail.

The government raises a threshold claim, i.e., that the defendant (who broached the competency issue himself while being represented by a lawyer who was unwilling to join in the client's action) "had no standing" to make a motion under Sec. 4244. Sec. 4244 provides that a motion for a judicial determination of a defendant's competence to stand trial may be made by the U.S. Attorney or by another person "in behalf of the accused". Metcalfe argues that when he himself made the "motion", he made it "in behalf of the accused" within the meaning of the statute.

We recognize that serious problems may arise when a represented defendant purports to take over any phase of the case and takes some action, such as the making of a motion, over the objection of, and against the advice of, his counsel. When that happens, management of the case by the trial judge becomes much more difficult. The record becomes muddied and a foundation is laid for later appeals and motions under 28 U.S.C. Sec. 2255 on grounds of ineffectiveness of counsel and irreconcilable conflict between counsel and his client. But while recognizing the problems, we do not choose, on these facts, to adopt a lack of standing concept as urged by the govern-

ment. The trial judge apparently had no trouble with the standing problem and determined to entertain the motion even though he thereafter denied it. Our rejection of the lack of standing claim should be read as being limited to these particular facts and as creating no precedent.

We proceed to the merits of appellant's claim. In certain passages of his brief, appellant seems to argue that once the motion was made, the appointment of a psychiatrist to examine into his competency to stand trial was "mandatory". He points to the wording of Sec. 4244 which provides that after the motion is filed, "the court *shall* cause the accused . . . to be examined . . . by at least one qualified psychiatrist . . . ." (emphasis added). He also points to *United States v. Ives,* 574 F.2d 1002, 1005 (9th Cir.1978) which contains a dictum that the "initial § 4244 motion gives the moving party a right to a mandatory psychiatric examination of the defendant". But in other passages of his brief, Metcalfe concedes that the trial judge has discretion to deny a motion under Sec. 4244 without appointing a psychiatrist if he determines that the motion is either frivolous or not made in good faith.

■ Even that admission is not a complete statement of the governing law. There are two alternative bases for denying a Sec. 4244 motion for the appointment of a psychiatrist. *Meador v. United States,* 332 F.2d 935, 937 (9th Cir.1964). They are:

1. A determination that the motion is insufficient in that it fails to set forth reasonable cause for believing that the defendant is incompetent to stand trial.

2. A determination that the motion is frivolous or not made in good faith.[1]

There appears to be a split in the Circuits as to the degree of discretion permitted to the trial judge in determining whether to grant such a motion. The narrow view, principally articulated by the Ninth Circuit, restricts the judge to a facial examination of the petition in light of surrounding circumstances to determine if reasonable cause and good faith are demonstrated. If the claims in the petition raise a prima facie doubt as to the defendant's competence and are not patently frivolous, the court *must* order a psychiatric examination. No preliminary hearing or other testing of the movant's reasonable cause is contemplated. *Meador v. United States, supra,* 332 F.2d at 936–38.[2] The court's role is roughly analogous to its discretion in deciding a motion on the pleadings.

Other Circuits have taken a broader view of the court's discretionary powers in determining Sec. 4244 motions. The judge may conduct a hearing on factual issues to explore whether there exists reasonable cause to believe the defendant is incompetent. Evidentiary material tending to prove or disprove the factual allegations in the petition may be taken. The judge may interrogate the defendant and/or his counsel and make such other inquiries as he believes might shed further light on whether reasonable cause exists. *United States v. Oliver,* 626 F.2d 254, 258–59 (2nd Cir.1980).[3] In

---

1. Metcalfe correctly points out that the trial judge here made no finding as to his basis for denying the motion. While the lack of a specific finding is unfortunate, we do not believe it requires a reversal because we conclude that the court's denial of this motion can be affirmed on the record under both alternatives.

2. *See also United States v. Bradshaw,* 690 F.2d 704, 712 (9th Cir.1982); *United States v. Irvin,* 450 F.2d 968, 970 (9th Cir.1971). At least one other Circuit appears to agree. *See Wear v. United States,* 218 F.2d 24, 26 (D.C.Cir.1954) (court has limited power to review Sec. 4244 motion and statutory language precludes "weighing of evidence" by court to determine

whether there is reasonable cause to believe defendant is incompetent).

3. *See also United States v. Hall,* 523 F.2d 665, 667 (2nd Cir.1975). This appears to be the majority view in recent decisions. The Eighth Circuit originally adhered to a narrow, literal construction of Sec. 4244, *see Krupnick v. United States,* 264 F.2d 213, 216 (8th Cir.1959) ("The statute does not provide for a framing of issues or a receiving of evidence on the question of cause for belief, so as to allow the court to weigh other facts against the grounds set out in the motion."), but has since moved to a more flexible approach, *see Rose v. United States,* 513 F.2d 1251, 1255 n. 4 (8th Cir.1975); *United States v. Nichelson,* 550 F.2d 502, 504 (8th

this later view, the court's authority might be analogized to its role in determining a summary judgment motion.

■ We think *Oliver* states the better rule. An order for a psychiatric examination under 18 U.S.C. Sec. 4244 should not be a perfunctory or ministerial act. *United States v. Hall,* 523 F.2d 665, 667 (2nd Cir. 1975). It would be a misuse of the statute for such motions to be granted "so routinely that the statute amounts to no more than a provision for an automatic continuance on the defendant's request." *United States v. Taylor,* 437 F.2d 371, 376 n. 7 (4th Cir.1971). Of course, the trial judge should not attempt to resolve the basic issue of whether the accused is in fact incompetent, *see Rose v. United States,* 513 F.2d 1251, 1255 (8th Cir.1975), just as a summary judgment hearing does not purport to judge the merits of the underlying issues where conflicting evidence is presented. So long as the inquiry is confined to a determination of whether reasonable grounds exist for believing the defendant *may be* incompetent, it is appropriate for the court to hold a hearing and consider factual data extrinsic to the bare allegations of the motions. As the Fifth Circuit has noted:

> "The statute does not bar the presentation to the court of evidentiary material tending to show that factual matters alleged as grounds for the 'reasonable cause to believe' do not in fact exist. Nor is the court barred from exercising its inherent power of conducting a hearing if it wishes, not on the issue of whether the accused lacks the requisite competency but on the issue of whether there really exist factual grounds supporting 'reasonable cause to believe'."

*United States v. McEachern,* 465 F.2d 833, 837 (5th Cir.), *cert. denied,* 409 U.S. 1043, 93 S.Ct. 539, 34 L.Ed.2d 494 (1972).

This procedure strikes the best compromise between the defendant's right to a determination of his competency to stand trial if reasonable doubt exists and the need for the court to insure orderly and speedy resolution of criminal matters without the delay of frivolous or insincere motions. Limiting the court to an examination of the bare motion may make the court little more than an automaton when confronted with even a minimally artful pleading. When inquiry by the court and consideration of extrinsic evidence can establish that the allegations in the motion are groundless, we see no reason to prevent a trial court from exercising this inherent power.

■ We, therefore, adopt the *Oliver* approach, and, as we shall shortly discuss, believe there is more than ample evidence to uphold the district court's decision under this standard. Initially, however, we would observe that the court's denial of this Sec. 4244 motion could be affirmed on the record even under the *Meador* standard which limits the judge to a determination of facial insufficiency, frivolousness or lack of good faith. First, the instant motion was insufficient on its face to establish reasonable cause for believing the defendant may be incompetent to stand trial. The only factual claims which could possibly be characterized as a showing of reasonable cause were Metcalfe's own conclusory claims that he was "emotionally unstable," that his father had taken him to a mental institution, and the claim that he had once had a serious drug problem which was long behind him. Individually or taken together, these claims do not, as a matter of law, constitute the necessary showing of reasonable cause. Allegations of prior confinement to a mental institution and a prior psychotic episode do

Cir.), *cert. denied,* 434 U.S. 998, 98 S.Ct. 640, 54 L.Ed.2d 494 (1977). (Court may hold preliminary hearing before acting on a request for a Sec. 4244 examination, to determine if the request properly shows reasonable cause or if the grounds upon which the request is based are frivolous). The Fifth Circuit has followed a similar pattern. *Cf. Lewellyng v. United States,* 320 F.2d 104, 105–6 (5th Cir.1963)

(quoting the analysis in *Krupnick, supra*) *with United States v. McEachern,* 465 F.2d 833, 837 (5th Cir.), *cert. denied,* 409 U.S. 1043, 93 S.Ct. 539, 34 L.Ed.2d 494 (1972), *and United States v. Varner,* 467 F.2d 659, 661 (5th Cir.1972) (District judge has discretionary power to conduct hearing before acting on Sec. 4244 motion).

\* \* \* \* \* \*

not compel granting of a Sec. 4244 motion. *United States v. Hall, supra,* 523 F.2d at 667. Even a claim of present drug use does not per se render a defendant incompetent to stand trial. *Howell v. United States,* 442 F.2d 265, 268 (7th Cir.1971); *United States v. Oliver, supra,* 626 F.2d at 259. The petition and the record do not disclose any claim, express or even implied, that Metcalfe could not understand the charge against him or that he was not able to cooperate with counsel in his own defense. These are the essence of incompetency to stand trial. *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

The record also provides ample support to justify the trial court's action based on a finding of frivolousness and lack of good faith. The motion was made on the eve of trial. It lacked the necessary detail and documentation characteristic of a good faith motion. Moreover, it was made over the objection of Metcalfe's trial counsel who obviously believed it was groundless and frivolous.

Under *Oliver* where the trial judge is in doubt after examining the face of the motion, he can interrogate the defendant and/or defense counsel and make such other inquiries as he believes might shed further light on whether reasonable cause exists. Even if the instant motion was, arguably, facially insufficient, the trial judge's interrogation of Metcalfe, his father and his lawyer amply supports a conclusion that no probable cause existed to believe that Metcalfe was incompetent to stand trial. A defendant's intelligent responses to such an interrogation may demonstrate that probable cause does not exist. *United States v. Oliver, supra,* 626 F.2d at 259. The instant record reveals that Metcalfe's answers were responsive and alert and showed an ability to understand and participate in the legal proceeding. Additionally, the fact that the defendant's attorney believes his client is competent and able to assist counsel in defense is significant evidence that he is competent. *Cf. United States v. Clark,* 617 F.2d 180, 186 (9th Cir.1980). Such facts existed here. Moreover, the information provided by the father directly contradicted the defendant's own factual claim as to prior mental treatment. On these facts we feel that the trial judge's decision that the motion created no reasonable doubt as to Metcalfe's competency to stand trial was correct and amply supported by the record.

## II. TESTIMONY OF THE CELLMATE

The government offered as a witness in the case, Mr. Joe Poole, who was defendant's cellmate in the Knox County jail. Metcalfe's statements to Poole were incriminatory. They amounted to a confession of the robbery and they included a description of the inside of the bank and of the place where Metcalfe had hidden his car in advance of the robbery. They thoroughly impeached Metcalfe's alibi testimony which had him at a different place when the bank was held up.

The record is barren of any evidence that Poole was placed in the jail cell by the FBI or was in any way contacted by the FBI beforehand concerning the obtaining of possibly incriminatory statements from Metcalfe. Poole did relate the statements to an agent of the FBI after the statements were made. Poole was never paid by the FBI. Nor did he, in relating the statements to the FBI, have any hope or expectation of help with respect to his own sentence.

On these facts, the use of a cellmate to relate a defendant's incriminatory statements had no taint of illegality.

The government is free to use information supplied to it by a defendant's cellmate so long as the use thereof does not amount to a deprivation of the defendant's Sixth Amendment rights as enunciated by the Supreme Court in *Massiah, supra,* and *Henry, supra.* Such testimony is barred only if it has been "deliberately elicited" from the defendant by a cellmate who is acting as a government agent. *United States v. Malik,* 680 F.2d 1162, 1165 (7th Cir.1982). In this case there is no basis whatever for believing that Poole was a government agent when the incriminatory statements were made to him. Nor is there

any basis for believing that the statements were "deliberately elicited" from Metcalfe in any sense.

■ The government correctly points out that even if, arguendo, Poole's statements were erroneously introduced in violation of the *Massiah* and *Henry* rule, it would amount to harmless error in this case. We agree. Other competent evidence against Metcalfe overwhelmingly demonstrated his guilt beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967).

The robber presented the victim teller a note of demand and also a bank withdrawal slip. The withdrawal slip was left at the bank and the robber took the note away with him. The note was later recovered. Both the slip and the note bore Metcalfe's fingerprints. The victim teller and the teller next to her both immediately identified Metcalfe from a photographic spread and did so again at the trial. A man matching Metcalfe's description was seen to have parked his car a block from the scene of the robbery just before it occurred and was seen going toward the bank thereafter. The same man was again seen running toward the car right after the robbery and was seen driving the car away. A bank surveillance photograph taken during the robbery showed Metcalfe in the bank. The witness who observed the parking of the car and its reentry after the robbery identified Metcalfe from that surveillance photograph as the man he had seen.

### III. ADEQUACY OF REPRESENTATION

■ Metcalfe makes a brief argument that his appointed counsel did not meet the minimum professional standard required under the Sixth Amendment. He contends that counsel should have made a Sec. 4244 motion for a pretrial psychiatric examination, even if he personally did not believe the claim was made in good faith. Counsel had the privilege and the ethical duty not to assert a right or position of his client if he believed it not to be in good faith. *See* A.B.A. Code of Professional Responsibility, Disciplinary Rules 7–101(b)(1), –102(a)(7). Defendant further suggests trial counsel should have called to testify on his behalf Gray Paige, a fellow inmate who allegedly was present when Metcalfe talked to Poole. Since no proper evidence is before this court as to what Paige would have testified to, and in view of the overwhelming case against Metcalfe, counsel's conduct can clearly not be labeled egregious error. *See United States v. Caldwell,* 625 F.2d 144, 149 (7th Cir.1980); *cert. denied,* 450 U.S. 1002, 101 S.Ct. 1712, 68 L.Ed.2d 205 (1981).

For the reasons stated herein, the conviction is affirmed.