**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Yvonne Cooks JOHNS,
Defendant-Appellant.**

No. 83–1595.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 4, 1983.
Decided March 1, 1984.

---

Kay L. Pomeranz, Chicago, Ill., for defendant-appellant.

James A. Lewis, Asst. U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before BAUER and ESCHBACH, Circuit Judges, and CAMPBELL, Senior District Judge.*

ESCHBACH, Circuit Judge.

Yvonne Cooks Johns pled guilty to kidnapping in violation of 18 U.S.C. § 1201, and was sentenced to a term of fifty years. The sole issue on appeal is whether there was sufficient evidence before the trial court to raise a bona fide doubt about Johns' competency. We hold that there was, and therefore remand the case to the district court for further proceedings.

I.

The defendant was charged with kidnapping in an indictment returned February 9, 1983. Counsel was appointed, and at the opening of a hearing on February 15, the following colloquy ensued:

Court: How do you plead?

Noll [defense attorney]: Not guilty.

Johns: I pled [sic] guilty, Your Honor.

Noll: Not guilty, Your Honor.

Johns: Yes, I do. I want to plead guilty. I am guilty. I plead guilty.

Mr. Noll, again over his client's objections, suggested a short recess. When the hearing resumed, Mr. Noll requested leave to withdraw as Johns' counsel, informing the

---

* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, sitting by designation.

court that his client's desire to plead guilty was against his recommendation. Judge Ackerman questioned the defendant about her plea, and her understanding of counsel's reasons for opposing the plea. The defendant responded:

> Your Honor, forgive me, but the mockery is over. The lord reigneth in me. I cannot plead innocent or not guilty to something I am guilty of. I am guilty. I do plead guilty.

Judge Ackerman then questioned the defendant about her background. He ascertained that Johns had completed high school and two years of "x-ray school," that she had come to Illinois to work in a house of prostitution where she had remained for a week, that she had no friends or relatives in the area, and that she had never been in trouble with the law or treated for mental illness. Judge Ackerman then carefully outlined the rights that the defendant would be relinquishing with a guilty plea, and questioned the defendant about her understanding of these rights. Johns replied that she understood, and the following colloquy ensued:

> Johns: My grief is over, and—it's over. I would also like to waive my right to an attorney because I don't need one.
>
> Court: Okay.
>
> Johns: The lord is my attorney.
>
> Court: Okay. We will get to that in just a minute. Are you okay? Do you want a short recess?
>
> Johns: No.

Johns was then sworn and questioned by the judge concerning the factual basis of her plea. Johns insisted that no one helped her commit the kidnapping, despite having told several inconsistent stories to various law enforcement authorities. The judge asked Johns again whether she had ever been treated for mental illness, and Johns replied that she had not. He then asked Mr. Noll if he believed Johns was competent. Noll replied that she was. The judge tentatively accepted Johns' guilty plea, but advised the defendant that it was unwise to proceed without a lawyer. The defendant replied:

> I am able to represent—God is my defense. I am—I don't need—I don't need anyone.

Mr. Noll was then allowed to withdraw as Johns' attorney.

At a presentencing hearing on February 24, Judge Ackerman told the defendant that he wanted to be sure she understood the consequences of both her guilty plea and her decision to proceed *pro se*. In response to questioning by the judge, the defendant either did not respond or answered merely "yes" or "no." At the March 25 sentencing hearing, the following discussion ensued:

> Court: Miss Johns, do you want to say anything to the Court? You want to say anything before sentence is imposed?
>
> Johns: No.
>
> Court: Would you—I know this is a formal place. . . . Would you like to talk to me? Would you like to tell me anything that you think I ought to know . . . to make your sentence less or make me understand more your situation or perspective?
>
> See what I mean?
>
> Would you like to tell me about this?

Receiving no response, the judge left the bench to sit with the defendant and asked three more times if the defendant had any response to the government's case. Again, the defendant said nothing. The judge then asked whether the defendant had read the presentence report. The defendant said she had not, and then that she had read some of it. The judge suggested a short recess so she could read the report, but the defendant refused:

> Court: You say no, you don't want to?
>
> Johns: I believe in Jesus Christ.
>
> Court: You believe in the Lord. I understand, but—
>
> Johns: I believe in Christ.
>
> Court: Yes. Okay. I understand that. How about the presentence report. Have you read it?
>
> Johns: I really have no more to say.
>
> Court: You have no more to say?

Johns: (Shook head.)

Within one month of the sentencing hearing, the defendant was transferred to the hospital at Alderson Penitentiary in West Virginia. She remained in the hospital for one month and on May 27, 1983, was transferred to the Female Psychiatric Service Ward at the Federal Correctional Center in Lexington, Kentucky.

## II.

■ If a court is presented with circumstances that raise a bona fide doubt about a defendant's "present ability to consult with his lawyer with a reasonable degree of rational understanding," or call into question a defendant's "rational as well as factual understanding of the proceedings," *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960) (per curiam), the court must hold a hearing to determine whether the defendant is competent. *United States v. Chavez,* 656 F.2d 512 (9th Cir.1981); *United States v. DiGilio,* 538 F.2d 972 (3d Cir.), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1976); *Wolcott v. United States,* 407 F.2d 1149 (10th Cir.) (en banc), *cert. denied,* 396 U.S. 879, 90 S.Ct. 156, 24 L.Ed.2d 137 (1969). In federal courts, if reasonable cause exists to doubt a defendant's competence at any time after arrest and prior to the imposition of sentence, a court must *sua sponte* order a psychiatric examination of the defendant. 18 U.S.C. § 4244.[1] Once a good-faith doubt exists, the court may not rule on the defendant's competency before it orders the § 4244 examination. *United States v. Metcalfe,* 698 F.2d 877, 881 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 1886, 76 L.Ed.2d 814 (1983); *Rose v. United States,*

513 F.2d 1251, 1255 (8th Cir.1975).[2] When a court had made findings about the competency of a defendant, we will overturn those findings only upon a showing that they are clearly erroneous. *See United States v. Voice,* 627 F.2d 138, 141 (8th Cir. 1980), and cases cited therein. But when there has been no psychiatric examination or judicial determination, our review is comprehensive. *See United States v. Chavez,* 656 F.2d 512 (9th Cir.1981).

■ At the first hearing before Judge Ackerman, the defendant contradicted her attorney, who evidently had believed until that moment that the defendant intended to plead not guilty. The attorney requested that he be allowed to withdraw because his client's plea placed him in a "difficult position," but maintained that "this woman needs assistance of counsel." The defendant soon after waived assistance of counsel, stating "The lord is my attorney." The defendant's actions and statements, coupled with the fact that she pled guilty at an early stage of the proceedings with no attempt to bargain, should have raised suspicion about her ability to "consult with [her] attorney with a reasonable degree of rational understanding." *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960) (per curiam). *See United States v. Chavez,* 656 F.2d 512, 519 (9th Cir.1981) (court considered similar factors as evidence raising bona fide doubt).

Suspicions about the defendant's competency reached the level of a bona fide doubt at the defendant's next two *pro se* appearances before the court. The defendant often remained silent when questioned by the

---

1. 18 U.S.C. § 4244 states in pertinent part:
   Whenever after arrest and prior to the imposition of sentence ... the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which such proceed-

ings are pending. Upon such motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused ... to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court.

2. The court may hold a preliminary hearing before acting on a request for a § 4244 examination to determine whether the request properly shows reasonable cause. *Metcalfe, supra; Rose, supra.*

judge. When she did reply, her responses were either monosyllabic or nonresponsive. For instance, in response to the court's inquiry about whether she wanted to read the presentence report, the defendant replied, "I believe in Jesus Christ." *See Osborne v. Thompson,* 481 F.Supp. 162 (M.D.Tenn. 1979), *aff'd,* 610 F.2d 461 (6th Cir.1979). When asked at least three times if she would say anything to the court before sentencing, the defendant remained silent. *See Saddler v. United States,* 531 F.2d 83, 85–86 (2d Cir.1976) (to protect defendant's right of allocution, court should not proceed to sentencing where defendant's nonresponsive replies raise doubt about competency).

The government contends that the defendant's testimony relating the factual basis of her plea indicates an ability to recall and recount the underlying circumstances of the charge. However, at the sentencing hearing, the government attorney told the court:

> [T]he stories Miss Johns has told—told on many occasions to various people within and without law enforcement communities can only be said to be inconsistent.... The only thing consistent about her statement is that it always seems to evolve from a previous statement she's given based upon whatever new information she learns.... I think that every time there is a new piece of information that contradicts something she said previously, she is more than willing to say, oh, yes, I did that also.

The government also points to the care with which the trial judge advised the defendant of the rights she was relinquishing by deciding to plead guilty and proceed *pro se.* Judge Ackerman's concern that the defendant be fully apprised of the import of her decisions is evident from the record. The record does not demonstrate, however, that the defendant was competent to comprehend her rights and the proceedings against her. *See Wolcott v. United States,* 407 F.2d 1149, 1150–51 (10th Cir.) (en banc), *cert. denied,* 396 U.S. 879, 90 S.Ct. 156, 24 L.Ed.2d 137 (1969).

Finally, the government notes that the defense attorney, in response to an inquiry by the court, stated his belief that the defendant was competent. While we have stated before that an attorney's representations about his client's competency are entitled to consideration, *see, e.g., United States v. Metcalfe,* 698 F.2d 877 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 1886, 76 L.Ed.2d 814 (1983), we believe that where no explanation for the attorney's competency assessment is elicited or offered, and the attorney's familiarity with his client has been drawn into question by his obvious surprise at his client's actions, his assessment is not dispositive.

We do not hold that the defendant was incompetent during the district court proceedings. And we note that the defendant's statements and actions could be construed as consistent with a strongly-held belief in God and her own guilt. Doubts raised by the defendant's actions, however, should not be resolved in favor of competency. We hold that the trial court should have ordered a psychiatric examination of the defendant pursuant to the provisions of 18 U.S.C. § 4244.

We are urged to reverse the judgment and sentence and remand the case to the district court for a new trial. In fashioning a remedy, however, we are cognizant of the possibility of conducting a *nunc pro tunc* determination of competency. *United States ex rel. Bilyew v. Franzen,* 686 F.2d 1238, 1246 (7th Cir.1982). Retrospective competency determinations, while not favored, *see Drope v. Missouri,* 420 U.S. 162, 183, 95 S.Ct. 896, 909, 43 L.Ed.2d 103 (1975), may nevertheless be conducted provided a meaningful hearing on the issue of the competency of the defendant at the prior proceedings is still possible. *See, e.g., Bilyew, supra,* 686 F.2d at 1246; *Zapata v. Estelle,* 588 F.2d 1017, 1021 (5th Cir.1979); *Harkins v. Wyrick,* 552 F.2d 1308, 1311 (8th Cir. 1977); *United States v. DiGilio,* 538 F.2d 972, 989 (3d Cir.), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1976).

Accordingly, we remand this case to the district court with the following instruc-

tions. The court should first determine whether a meaningful hearing on the defendant's competency at the prior proceedings is still possible. The possibility that such a hearing can be held in this case is enhanced by the fact that the trial court will have the benefit of psychiatric examinations performed on the defendant shortly after her incarceration. *See Rose v. United States,* 513 F.2d 1251, 1257 n. 6 (8th Cir. 1975) (evidence of mental state of accused soon after guilty plea relevant to determination of accused's state of mind at time of plea). The defendant's attorney could also testify concerning the basis of his earlier assessment. If the court determines, on the basis of the psychiatric examination and whatever testimony it deems relevant, that it can conduct a meaningful hearing for the purpose of determining Johns' competency at the prior proceedings, it should conduct such a hearing. If, after such hearing, the court concludes that Johns was competent, the conviction shall stand affirmed; if it concludes she was not competent, the conviction must be set aside. However, if the court initially determines that a meaningful hearing on the competency of the defendant at the prior proceedings is no longer possible, the conviction must be vacated, and the defendant retried at such time as she is found competent to stand trial.

### III.

For the reasons expressed above, we remand the case to the district court for further proceedings consistent with this opinion. Circuit Rule 18 shall not apply.

BAUER, Circuit Judge, dissenting.

Defendant Johns insisted on pleading guilty, waived her right to counsel, and invoked a deep belief in God. I do not believe that this evidence was sufficient to raise a bona fide doubt about Johns' competency, and therefore I respectfully dissent from the majority's conclusion.

The majority opinion states that Johns' behavior at her first hearing before the district court raised a suspicion about her ability to consult with her attorney. It is true that Johns' guilty plea apparently surprised her attorney, that waiving her right to counsel carried significant implications for her case, and that her statement that "[t]he Lord is my attorney" was an unusual way of expressing her relationship with God. In my opinion, though, none of Johns' statements raised a genuine doubt about her "present ability to consult with [her] lawyer with a reasonable degree of rational understanding." *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). The district court explained to Johns the implications of her decisions, and Johns' responses do not indicate that she failed to appreciate the significance of her actions. The court also inquired into whether Johns was under the influence of alcohol or drugs, and whether she ever had been treated for mental illness. Although the majority opinion acknowledges that Johns' defense attorney told the court that he believed Johns was mentally competent, the majority omits that after questioning Johns the court itself commented that Johns seemed to be competent:

THE COURT: Okay.

Mr. Noll [appointed defense attorney], you have talked to Miss Johns.

Any reason to think she's not mentally competent?

She certainly appears to be mentally competent to me.

MR. NOLL: No, Your Honor, she's mentally competent.

Tr. of Proceedings, Feb. 15, 1983, at 29.

I also disagree with the majority's conclusion that Johns' responses at her next two appearances before the district court raised any suspicions about her competency to a bona fide doubt. The majority opinion characterizes Johns' responses as silent, nonresponsive, or monosyllabic, yet a review of the transcript shows that virtually all of Johns' answers were appropriate. Her monosyllabic responses were answers of "yes" or "no," principally in response to the court's repeated attempts to appoint new counsel for her, and her silence was in response to the court asking whether she had anything to say before sentencing.

Her only nonresponsive statement was "I believe in the Lord Jesus Christ" in answer to the court's inquiry as to whether she wanted to read the entire presentence report. I do not believe that this response alone raises a bona fide doubt regarding Johns' competency, especially in light of her earlier-mentioned tendency to express her religious beliefs in an unorthodox fashion.

Although I agree with Johns' contention that post-trial events may help clarify the evidence here, Appellant's br. at 16, I disagree with the conclusion that Johns draws from those post-trial developments. Johns infers that her transfer to a psychiatric ward from the penitentiary two months after her sentencing hearing helps to show that she was mentally incompetent at the time of trial. Neither Johns' brief nor the majority opinion, however, discloses that Johns since has been transferred back to the penitentiary. More importantly, the Director of the Bureau of Prisons is required by statute to notify the district court if post-sentence inspection shows probable cause that a criminal defendant was mentally incompetent at the time of trial. 18 U.S.C. § 4245 (1949). The record is void of any indication that the district court has been notified of any inspection showing that Johns was mentally incompetent, and thus, by negative implication, we can conclude that any examination of Johns conducted at the psychiatric ward did not reveal that she was mentally incompetent.

The record provides a more logical explanation of Johns' behavior before the district court. Initially, Johns had told the FBI that she had been coerced into kidnapping the child and that the kidnapping was an act of retaliation against the child's mother. During her appearances before the court, Johns stated that no one else had been involved in the kidnapping. Johns took full responsibility for the crime and claimed that she kidnapped the child only for the ransom money. At the sentencing hearing, the district court told Johns that he believed her earlier story and was convinced that the kidnapping was in retaliation for the mother's cooperation with the Springfield Police Department in an earlier investigation. The court and the Assistant United States Attorney repeatedly attempted to persuade Johns to reveal her accomplices in the crime. When Johns refused to cooperate, the court sentenced her to fifty years in the federal penitentiary with the admonishment that "[i]f you want to be honest with the Court, you let me know." Tr. of Proceedings, March 25, 1983, at 14.

I am convinced that Johns' reluctance to identify the other persons involved in the kidnapping, not mental incompetency, accounts for her actions. Accordingly, I respectfully dissent.