**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**John R. CLARK and Nathan J. Felix,**
**Defendants–Appellants.**

Nos. 03–4156, 04–1429.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 14, 2004.

Decided Oct. 29, 2004.

Before EASTERBROOK, MANION, and DIANE P. WOOD, Circuit Judges.

## ORDER

This is a consolidated criminal appeal by Nathan Felix and John Clark who pleaded guilty, respectively, to possessing equipment to manufacture methamphetamine and conspiracy to manufacture methamphetamine. On appeal, Felix challenges his sentence, arguing that the district court erred in applying the sentencing guideline applicable to attempted manufacturing of methamphetamine. Clark argues on appeal that the district court erred in denying his request at sentencing for a hearing on his mental competency. We affirm.

### I.

On September 3, 2002, Nathan Felix, John Clark, and Travis Ryan agreed to manufacture methamphetamine. Ryan gave Felix and Clark $500 so that they could purchase items needed to make the methamphetamine. Felix and Clark then went to various stores and began buying the necessary items. They were able to purchase nearly everything needed to make the drug except anhydrous ammonia, which is not readily available for sale. Felix and Clark decided to steal the anhydrous ammonia from an agricultural cooperative in Wisconsin. During the early morning hours of September 4, 2002, the two broke into the cooperative, but before they located the anhydrous ammonia, they inadvertently tripped an alarm wire. The two fled in different directions, Felix in his vehicle and Clark on foot.

Police, responding to the alarm, stopped Felix as he was driving away. Felix initially denied any involvement in the attempted theft of anhydrous ammonia, but officers nonetheless arrested him because he had lied about the ownership of the vehicle he was driving when stopped. The

officers then obtained a warrant and searched the vehicle. They recovered thirty boxes containing a total of 2,880 pseudoephedrine pills, forty-two lithium batteries, vinyl tubing, one gallon of toluene, one gallon of muriatic acid, two tote boxes, four funnels, a basting spoon, a box of 200 coffee filters, one pair of leather gloves, a crescent wrench and pliers, a propane stove, a liquid propane tank, a box of twelve mason jars, a six-piece set of pots, a five-piece set of pliers, a set of two-way radios, a laser pointer and a flashlight.

A few hours after the attempted robbery, officers also arrested Clark, who was still walking along Interstate 94 in rural Wisconsin. Clark confessed to the officers that he had been involved in the attempted theft of anhydrous ammonia and that he had conspired with Felix and Ryan to manufacture methamphetamine. Clark also told the police that the only item they had not yet purchased was a substance called Vita–Blend, which is a "cut" added to the finished product. Police also learned that Felix and Clark planned to make the methamphetamine at a cabin owned by Felix's uncle, and that the two were planning to meet Ryan there after obtaining the necessary materials and equipment. The three agreed that Ryan would then take over and see to the distribution of the methamphetamine.

Based on these facts, a grand jury indicted Felix and Clark, charging them with conspiring to manufacture methamphetamine in violation of 21 U.S.C. § 846; conspiring to possess materials, chemicals, and equipment to manufacture methamphetamine in violation of 21 U.S.C. § 846; and possessing materials, chemicals, and equipment to manufacture methamphetamine in violation of 21 U.S.C. § 843(a)(6). Felix eventually entered an unconditional guilty plea on count 3 of the indictment, namely possessing materials and equip-

ment to manufacture methamphetamine. The district court sentenced Felix to thirty-three months in prison and three years of supervised release. Clark pleaded guilty to the conspiracy to manufacture methamphetamine count. Clark, who had a much more extensive criminal history than Felix, received a 188–month prison sentence (the top end of the 151—188 month range). Felix and Clark appealed their sentences, and we consolidated their appeals.

## II.

On appeal, Felix argues that the district court erred in calculating his sentence by applying the offense level for attempt to manufacture a controlled substance contained in U.S.S.G. § 2D1.1. In his appeal, Clark claims that the district court erred in denying him a competency hearing prior to sentencing him, and violated his right to due process by sentencing him while incompetent. We consider each issue in turn, beginning with Felix's sentence.

### A. Felix's Appeal

Felix maintains on appeal that the district court erred in applying the base offense level for "attempting to manufacture a controlled substance," as opposed to the offense level for "possessing materials, chemicals, and equipment to manufacture methamphetamine." Section 2D1.12 is the pertinent sentencing guideline provision for a defendant, like Felix, who was convicted of violating 18 U.S.C. § 843(a)(6), possessing materials, chemicals, and equipment to manufacture methamphetamine. That section, entitled "Unlawful Possession, Manufacture, Distribution, Transportation, Exportation, or Importation of Prohibited Flask, Equipment, Chemical, Product, or Material; Attempt or Conspiracy," contains a cross-reference which provides: "If the offense involved

unlawfully manufacturing a controlled substance, or attempting to manufacture a controlled substance unlawfully, apply § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, Trafficking) if the resulting offense level is greater than that determined above." U.S.S.G. § 2D1.12.

In this case, the district court concluded that Felix's offense involved attempting to manufacture a controlled substance, and it accordingly applied the higher offense level contained in U.S.S.G. § 2D1.1. Specifically, the district court assessed Felix an offense level of thirty under § 2D1.1, as opposed to the offense level of fourteen provided under § 2D1.12.[1] The district court determined that the cross-reference to § 2D1.1 applied because Felix had attempted to manufacture methamphetamine by purchasing nearly all of the items needed to manufacture the drug, and that he would have succeeded had he not been caught while attempting to steal the anhydrous ammonia. As the district court reasoned, "[w]hen you start to collect all but one or two of the items that are necessary to make methamphetamine and you are about to collect the last one or two items that are crucial to it, then you have gone beyond the stage of just possessing ingredients and you are actually attempting to do something with those ingredients which is to make methamphetamine."

Felix appeals from the district court's determination that the cross-reference applies, first arguing that the district court erred in finding that he possessed all but one or two of the items needed to make methamphetamine because there was no evidence as to the ingredients and supplies needed to make methamphetamine. However, given the extensive list of the items seized from Felix's car and Clark's statements to officers that they had purchased everything except for the "cut," and that they could make about two ounces of methamphetamine from the ingredients they had purchased, the district court did not err in concluding that Felix had obtained all but a couple of the items needed to make methamphetamine.

Felix's second argument is that the mere possession of the ingredients necessary to make methamphetamine does not constitute "attempt." Application Note 2 to U.S.S.G. § 2D1.12 provides that attempt for sentencing purposes means the same thing as for the underlying offense. Attempt for the substantive offense of manufacturing methamphetamine requires that a person knowingly take a substantial step toward the commission of the offense with the intent to commit that offense. *United States v. Rovetuso*, 768 F.2d 809, 821–22 (7th Cir.1985). The district court concluded that by purchasing nearly all of the ingredients and then breaking into a business to steal the anhydrous ammonia, Felix had attempted to manufacture methamphetamine.

Felix responds by arguing that "an attempt to manufacture methamphetamine must require something more than the mere possession of the items used to manufacture methamphetamine," because if "it does not require something more," the sentencing guideline provisions which provide penalties for possession of these items would be rendered meaningless. In other words, Felix argues that under the district court's interpretation every possession would be an attempt, yet that is inconsistent with the guidelines which establish

---

1. The district court started at an offense level of thirty, but then reduced his offense level by two levels under the safety valve provisions of U.S.S.G. § 5C1.2; three levels for acceptance of responsibility; two levels for playing a minor role; and three levels for substantial assistance, leaving Felix with a total offense level of 20.

two separate offense levels for possession and attempt.

This case, however, goes beyond mere possession in that Felix and his co-conspirators collected money to purchase the ingredients; they purchased and possessed nearly all of the ingredients necessary to make the methamphetamine; they broke into a business and attempted to steal one of the last ingredients necessary, anhydrous ammonia; they arranged for a location to manufacture the drugs; and they planned to drive to the cabin to make the methamphetamine after stealing the anhydrous ammonia, but failed merely because they failed in the theft and were instead arrested. Thus, while other cases involving possession might not reach the level of attempt, based on these facts, the district court did not err in concluding that Felix had attempted to manufacture methamphetamine. *Cf. United States v. Jessup*, 305 F.3d 300, 302–03 (5th Cir.2002) (affirming district court's conclusion that defendant had attempted to manufacture methamphetamine for purposes of U.S.S.G. § 2D1.11 where defendant took "the affirmative act of collecting a substantial part of the equipment and ingredients for manufacturing, . . .").[2]

### B. *Clark's Appeal*

■ On appeal, Clark claims that, although he was competent to plead guilty, by the time of his sentencing hearing he was no longer competent to proceed. He further contends that rather than sentencing him, the district court should have ordered a competency examination under 18 U.S.C. § 4244. Clark also claims that

his due process rights were violated because he was sentenced while incompetent.

Section 4244(a) provides that "at any time prior to the sentencing of the defendant [the court] shall order such a [competency] hearing on its own motion, if it is of the opinion that there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." 18 U.S.C. § 4244(a). If, after conducting such a hearing, the district court concludes that the defendant is suffering from a mental disease or defect requiring treatment, § 4244(d) provides that the district court shall commit the defendant to the custody of the Attorney General and that "[s]uch a commitment constitutes a provisional sentence of imprisonment to the maximum term authorized by law. . . ." 18 U.S.C. § 4244(d).

Although Clark cites to § 4244, which concerns the imposition of a provisional sentence where mental health treatment is needed, Clark argues on appeal that the district court erred in denying his request for a competency hearing because he was unable to properly assist in his defense at the sentencing hearing. Thus, while citing § 4244, Clark frames his argument on appeal in the terms of 18 U.S.C. § 4241. Section 4241 provides that if, prior to sentencing, "there is a reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," the court shall order a

---

**2.** Felix did not argue on appeal that his sentence violated the mandates of *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *United States v. Booker*, 375 F.3d 508 (7th Cir.2004), *cert granted*, —— U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004), both of which were decided prior to oral argument. Therefore, he has waived any challenge to his sentence based on the district court's assessment of facts beyond those underlying his guilty plea.

competency hearing. 18 U.S.C. § 4241(a). "[T]he failure to grant such a hearing in the face of sufficient evidence to establish reasonable cause to believe that a defendant is mentally incompetent is a violation of due process." *United States v. Garrett,* 903 F.2d 1105, 1116 (7th Cir.1990). In the interest of completeness, we analyze Clark's claims under both § 4241 and § 4244.

As noted, under § 4241, "[t]he test for competency is whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as a factual understanding of the proceedings against him.'" *Garrett,* 903 F.2d at 1116 (quoting *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). After hearing from Clark's attorney and Clark himself, the district court commented on Clark's competency, as follows:

> Mr. Clark, although, as I said, I think that you do have some problems, it's very evident to me from listening to you talk about your presentence report that you have a very good understanding of what is going on. Probably a lot better than many people that appear here for sentencing. Obviously you read the presentence report carefully. You thought about it. You caught some errors in it or potential errors.

Clark challenges the district court's assessment, claiming that, given his mental history and his various responses at the sentencing hearing, the district court could not determine his competency without benefit of a competency hearing, and violated his rights to due process by proceeding with sentencing. Clark maintains that in reviewing the district court's refusal to hold a competency hearing, our review is comprehensive, citing *United States v. Johns,* 728 F.2d 953, 956 (7th Cir.1984).

The import of *Johns,* however, is less than clear. Although that case spoke of this court's "comprehensive review" of the district court's refusal to hold a competency hearing, we also noted that such a review was appropriate only "when there has been no psychiatric examination or judicial determination, ..." *Id.* Conversely, "[w]hen a court has made findings about the competency of a defendant, we will overturn those findings only upon a showing that they are clearly erroneous." *Id.* The *Johns* court also noted that "[t]he court may hold a preliminary hearing before acting on a request for a § 4244 examination to determine whether the request properly shows reasonable cause." *Id.* at 956 n. 2.[3]

Later, in *Garrett,* 903 F.2d 1105, this court revisited the standard of review in considering whether a competency hearing was required under 18 U.S.C. § 4241(a). There this court noted that some courts have reviewed the question of competency under the abuse of discretion standard and others have characterized their scrutiny as "plenary review." *Id.* at 1116. *Garrett* reiterated the holding of *Johns,* but then added that "while our review is comprehensive, the district court retains a good deal of latitude in how it evaluates the need for a formal competency hearing." *Id.* For instance, "[i]n some instances, the

---

**3.** The *Johns* decision addressed the precursor to 18 U.S.C. § 4241, § 4244. The Insanity Defense Reform Act later replaced former § 4244 with § 4241. The Act also included the new § 4244, which addresses the need for mental health treatment and the imposition of a provisional sentence, as opposed to competency, which is now addressed by § 4241. Therefore, although *Johns* referenced § 4244, the decision concerned the question of whether a defendant was able to understand the nature and consequences of the proceedings and was thus competent to proceed at sentencing.

court may hold a preliminary hearing before deciding whether to conduct a formal hearing under the statute," whereas "[o]n other occasions, circumstances may indicate that the most useful way of determining whether 'reasonable cause' exists is to examine evidentiary material tending to prove or disprove the underlying factual allegations." *Id.*

Although there is no precise line between comprehensive review and clear error review, *Johns* and *Garrett* highlight that a court may hold a preliminary hearing to determine whether a full competency hearing is required. When a preliminary hearing is held, it would appear that the proper standard of review is clear error, because a "judicial determination" has been made. *Garrett,* 903 F.2d at 1116; *Johns,* 728 F.2d at 956. However, we need not resolve that issue in this case because under either the clear error standard or a more comprehensive review, we conclude that the district court did not err in denying Clark a competency hearing.

As noted above, Clark was entitled to a competency hearing under § 4241(a) only if there were a reasonable basis to question his competency. And competency for these purposes means that Clark was able to consult with his attorney with a reasonable degree of rational understanding and have a rational, as well as factual, understanding of the proceedings. *Garrett,* 903 F.2d at 1116. The transcript of the sentencing hearing makes clear that Clark was competent. Specifically, the transcript shows that it was Clark himself who requested that his attorney present the request for a competency hearing. And while his attorney was presenting his rationale for the hearing, Clark added that a hearing might be appropriate under 18 U.S.C. § 3552 (which allows a district court to order a psychiatric or a psychological examination if additional information is needed before or after the court's receipt of a PSR). Clark also objected to two portions of the PSR, claiming they were inaccurate. The district court explained to Clark that those portions of the PSR would not affect his sentence, but Clark explained that he was concerned because they were relevant for his prison classification. Clark's conduct demonstrates that he had a reasonable degree of rational understanding of the proceedings and was able to assist his attorney and participate in the sentencing hearing.

Clark responds by pointing to his extensive history with mental illness, including an October 2002 diagnosis of incompetency, and other diagnoses of psychotic illness, schizo-affective disorder and "poly-substance abuse by history," as well as multiple suicide attempts. There is no question that Clark suffered from a variety of mental illnesses and that, at the time of sentencing, he was having problems obtaining the proper dosage of medication at the proper time. However, that does not mean that Clark was incompetent for purposes of sentencing. Rather, as noted above, the question is whether Clark understood the proceedings and could assist his attorney. Clark's conduct throughout the hearing demonstrates that he could.

Clark also highlights comments he made during sentencing, which he claims demonstrate he was incompetent or creates a reasonable question of his competency. For instance, Clark points to the comments he made in response to the court's inquiry as to whether there was anything else "you want me to know about you before I sentence you." Clark responded:

No, no. I just—I got to go. I can't—I'm high risk. They just let me out once a day to take a shower and stuff. The nurse is messing with me, messing with medication. I got to go. I can't stay much longer. I want to get it done with

fast rather than draw it out even if it's—give the sentence, whatever. It don't matter. It can't compare to what I'm going through now. So where I go has got to be better than here.

That response, however, occurred at the end of the sentencing after Clark had already highlighted the problems with the PSR and explained why the errors mattered. At that point, Clark just wanted to get the sentencing hearing over with so he could get out of where he was then confined and into the structured prison system. That does not demonstrate incompetency. And after reading the sentencing transcript in its entirety, we agree with the district court's finding that Clark had "a very good understanding of what is going on." Therefore, the district court did not err in refusing to hold a competency hearing under § 4241(a) prior to sentencing. Because there was insufficient evidence to justify a competency hearing, Clark's claim that he was denied due process by being sentenced while incompetent also fails.

■ Remaining, however, is the question of whether under § 4244 Clark was entitled to a hearing. That section differs in that the question under § 4244(a) is whether there is reasonable cause to believe that the defendant "may be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." 18 U.S.C. § 4244(a). The district court concluded that Clark failed to establish a reasonable basis to believe that he needed treatment at a mental health facility in lieu of imprisonment. The district court did not err in reaching this conclusion because, although it is undisputed that Clark suffered from a mental disease or defect, there was no evidence indicating that

Clark was in need of treatment in a mental health facility, as opposed to being treated while imprisoned. Therefore, the district court also did not err in denying Clark a competency hearing under § 4244.

For these and the foregoing reasons, we AFFIRM Felix and Clark's sentences.